212-08/PJG
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MAC NAVIGATION LTD.,

                       Plaintiff,

      -against-

HAWKNET LTD.,

                       Defendant.
-----------------------------------------------------------x

**08 Civ. 3512 (RMB)**

**FIRST AMENDED
VERIFIED COMPLAINT**

Plaintiff MAC NAVIGATION LTD. (hereinafter "MAC NAVIGATION"), for its First

Amended Verified Complaint against Defendant HAWKNET LTD. (hereinafter "HAWKNET"),

alleges upon information and belief as follows:

     1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

of charter party. This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C.

§1331 in that the action arises under the New York Convention on the Recognition and

Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal

Arbitration Act, 9 U.S.C. §1 *et seq.*

2.     At all times material hereto, Plaintiff MAC NAVIGATION was and still is a business entity duly organized and existing under the laws of a foreign country with an address and place of business at Road Town, VG-Tortola, British Virgin Islands.

3.     At all times relevant hereto, Defendant HAWKNET was and still is a foreign business entity organized and existing under the laws of a foreign country with an address at Tuition House, 27-37 St. Georges Road, London SW19 4EU, United Kingdom.

4.     On or about March 6, 2008, Plaintiff MAC NAVIGATION, in the capacity as disponent owner of the M/V TOLMI, entered into a maritime contract of charter party with Defendant HAWKNET under which Defendant HAWKNET agreed to time charter the vessel. A copy of the dated March 6, 2008 charter (consisting of the re-cap, the long form email agreement and the underlying pro-forma) is annexed hereto as Exhibit A.

5.     The vessel was duly delivered into the service of Defendant HAWKNET and has been performing under the time charter agreement, with HAWKNET paying hire, including the first and second hire payments, which were paid via BROBULK LIMITED. A copy of a credit advice reflecting the initial payment and the second payment of hire for the M/V TOLMI is annexed hereto as Exhibit B demonstrating the payments of hire.

6.     The third hire payment under the charter was due to be paid on April 7, 2008 but was not received.

7.     A protest was lodged by Plaintiff MAC NAVIGATION and confirmation has since been received from Defendant HAWKNET that it will not be in a position to make the third hire payment or any subsequent hire payments, and is repudiating the contract.

8.     The vessel is currently on a laden voyage to Surabaya which the Plaintiff will need to complete despite the above-referenced breach. The sums due under the third hire

payment (April 7 – 22) plus the additional hire which will be unpaid for the period up through the anticipated completion of discharge at Surabaya (estimated to be April 27, 2008) will amount in total to $780,000.

9.    In addition to the foregoing, and in view of Defendant HAWKNET's confirmation that it will not perform the balance of the charter and is repudiating, Plaintiff has and/or will suffer the following damages as nearly as can now be computed:

| | | |
|---|---|---|
| (i) | Hire through completion of laden voyage and discharge at Surabaya as per ¶ 8 above | $780,000 |
| (ii) | Representation expenses through end of the current laden voyage | $1,000 |
| (iii) | ILOHC expenses | $5,000 |
| (iv) | Loss of hire and bunker consumption during anticipated 10 day ballast voyage to pick up mitigation (i.e. 10 days steaming to either Australia or India at $39,000/day plus bunkers of IFO at $132,600 and MDO of $25,500 for a total of: | $548,100 |
| (v) | Loss of hire based upon difference between anticipated substitute fixture at market rate and c/p rate for balance of charter period (44 days) | $264,000 |
| (vi) | Disbursement expenses at Surabaya | $50,000 |
| (vii) | Port costs at Singapore for bunkering | $3,000 |
| (viii) | Anticipated third party claim by bunker suppliers at Kiel Canal for 130 M/T of IFO at $520/M/T | $67,600 |
| (ix) | Anticipated third party claim by bunker suppliers at Suez for 130 M/T of IFO at $530/M/T ($68,900) and 40 M/T of MDO at $980 ($39,200) for a total of | $108,100 |

|       |                                              |             |
|-------|----------------------------------------------|-------------|
| (xi)  | Balance of MDO needed for vessel to complete voyage | $20,400 |
|       | Total Anticipated Damages                    | $1,847,200  |

10.   Based upon the foregoing breach, Plaintiff has or will suffer damages as nearly as can be estimated as outlined above in the total sum of $1,847,200.

11.   The charter party provides for the application of English Law and any dispute arising thereunder is to be referred to arbitration at London, and Plaintiff MAC NAVIGATION specifically reserves its right to arbitrate the substantive matters at issue.

12.   This action is brought to obtain jurisdiction over the Defendant, security in favor of Plaintiff MAC NAVIGATION in respect to its claims against Defendant and in aid of the London Arbitration proceedings and to compel Defendant's appearance in the arbitration.

13.   Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

14.   This action is further brought to obtain security for the additional sums which are recoverable including Plaintiff's anticipated attorneys' and arbitrators' fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

15.   Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $340,000, and interest on its damages are estimated to be $452,564.00 (calculated at the rate of 7% for a period of 3.5 years, the estimated time for completion of the proceedings in London) including any appeal of any arbitration award issued. Further, and to the extent further breaches may occur when additional hire becomes due,

Plaintiff reserves the right to amend the Complaint and seek additional security in respect to any further breaches.

### Request for Rule B Relief

16.    Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS") at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

17.    The total amount to be attached pursuant to the calculations set forth above is $2,639,764.00

WHEREFORE, Plaintiff MAC NAVIGATION LTD. prays:

a.    That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.    That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including $2,639,764.00 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of

Defendants (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its name at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.   That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

d.   For such other, further and different relief, as the Court may deem just and proper in the premises.

Dated: New York, New York
       April 14, 2008

FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
MAC NAVIGATION LTD.

By: _____
     Peter J. Gutowski (PG 2200)
     80 Pine Street
     New York, NY 10005
     (212) 425-1900

## **ATTORNEY VERIFICATION**

State of New York    )
                     ) ss.:
County of New York   )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1.    I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Amended Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.    The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.    The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
                      Peter J. Gutowski

Sworn to before me this
14th day of April, 2008

_____
          Notary Public

PETER J. McCARTHY
Notary Public, State of New York
No. 01MC4884235, Qualified in Kings County
Certificate Filed in New York County
Commission Expires August 1, 2009

Ex. A

```
> >
> >         Howe Robinson Shipbrokers - Handy / Handymax Dept.
> > London - Hong Kong - Shanghai - Tokyo - Johannesburg - Hamburg
> >
> > E-mail: hrs.hdy@howerobinson.com
> > CEH48029726   06/03/2008   15:26:54
> >
> >
> > MICHAEL / CHARLES
> >
> > MV TOLMI / HAWKNET
> >
> > PLS FIND BLW HOW WE ARE AGREED ON M/TERMS :
> >
> >
> > - ACCT HAWKNET - TUITION HOUSE 27-37 ST GEORGES ROAD WIMBLEDON SW194EU
> >   UK WWW.HAWKNET.CO.UK - P&I AMERICAN CLUB


> >
> > - TC PERIOD WITH REDELY MIN 20TH JUNE 08 TO MAX 3RD SEPT PLUS/MINUS 15
> >   DAYS ON MAX PERIOD ONLY IN CHOPT
> >   TRADING VIA SPS/SBS ALWAYS AFLOAT ALWAYS
> > - DELY 16 HRS AFTER SAILING LEIXOES
> > - LAYCAN 5/10 MCH ETC DISPORT 6TH MCH AT ABT 23:00 HOURS AGW
> > - REDELY AS PER BTB CP
> > - HIRE USD 39,000 DIOT
> > - VSL WILL DELIVER WITH ABT 770 IFO AND ABT 140 MDO. REDEL SAME
> >   QUANTIES AS ON DEL EXCEPT 90 MDO. PRICES BENDS USD 525/900 IFO/MDO
> > - OWISE AS PER BTB CP ATTACHED WITH LOGICAL AMMENDMENTS AS PER M/T
> >   3.75 ADCOM + 1.25 0/0 HOWE ROBINSON
> > - SUB CHTRS RECONFIRMATION LATEST 1700 HRS LONDON TODAY
> >
> >
> > BRGDS/CHARLES HASLAM
> > HOWE ROBINSON LONDON - HANDY/HANDYMAX DEPT
> > DDI: + 44 (0)20 7457 8413
> > MOB: + 44 (0)7876 652 716
> > E-MAIL: HRS.HDY@HOWEROBINSON.COM
> >
> >
> >
> >
> >
> > This e-mail and any attachments are believed to be free from viruses
> > but
> it
> > is
> > your responsibility to carry out all necessary virus checks. Howe
> > Robinson Shipbrokers accepts no liability for any
> damage
> > caused by any virus transmitted by this e-mail.
> >
>
```

---------------------------------------------------------------------
This message may contain confidential, proprietary or legally privileged information and
is intended only for the use of the addressee named above. No confidentiality or privilege
is waived or lost by any mistransmission. If you are not the intended recipient of this
message you are hereby notified that you must not use, disseminate, copy it in any form or
take any action in reliance on it. If you have received this message in error please
delete it and any copies of it and notify Mac Navigation Ltd immediately.

```
>                            M  E  M  O
>                            ==========
>                  FIXTURE NOTE FOR M/V "TOLMI"
>                     IS ALREADY ON THE SCREEN
>                  =============================
>
>
>                          V E S S E L
>                        F I X T U R E
>                      ===================
>
> Date : 20.09.2007
>        ------------
>
> Account Ref. No. (SK) : S 0004           Name :  "TOLMI"
>                         --------------    ------------------------
> Contract Ref. No (SK) : K 004
>
> OWNERS                  : WESTDENE MARITIME LTD. (ISLE OF MAN)
>
> MANAGERS                : DOIL STEAMSHIP, PIRAEUS
>                           98B FILONOS STREET
>                           185 36 PIRAEUS
>                           P.I.C. MR. ALEKOS STAVRIDIS
```

1

```
                         TEL   : 00 30 210 4284014
                         FAX   : 00 30 210 4529004
                         E-MAIL: astavridis@hotmail.com
                         MOBILE: 00 30 6944316905
>
>
> DISPONENT OWNERS      : NOBEL BULK CARRIERS LTD. - HONG KONG
>
> Contact details in case of emergency
> Mr. Xue Guang Yu
> Mandarin Marine Co., Ltd
> Tel: 86 10 6517 0101-106
> Fax: 86 10 6517 9070
> Email: Mail@mmcl.com.cn
> Uk Tlx: 051 94076344 MMCL G
> Mob: 86 139 1121 5989
>
> VSL IS UNDER T/C TO   : MCTAGGART SHIPPING AND MANAGEMENT CO LTD.
>                         ------------------------------------------
> Delivery Location     : DEL DLOSP C.J.K (CHANGJIANGKOU) AND OWNERS CONFIRM
> THAT
>                         DELIVERY POINT WILL NOT INVOLVE ANY OUTBOUND
>                         EXPENSES/PILOTAGES ETC
>
> Delivery Notices      : ONWERS/MASTER SHALL GIVE NOTICE ON FIXING AND THEN
>                         5 DAYS APPROXIMATE AND 3/2/1 DAYS DEFINITE OF
> DELIVERY.
>                         (AS PER BASED C/P CL.30 NOTICES).
>                         ------------------------------------------------------
> Laydays Cancelling    : 7TH - 14TH OCTOBER' 2007.
>
> VESSEL'S ITINERARY    : VSL'S ETA ZHANGJIAGANG 3RD - 6TH SEPT'07 FOR
>                         DISCHARGING LOGS, ETCD 7TH - 10TH SEPT'07 IF
> AGW/WP/WOG
>
>                         contact details of agent at Zhangjiagang:
>                         Suzhou Changhang Ocean Shipping Agency Ltd.
>                         PIC: MR MICHAEL
>                         MOB: +86 13601566520
>                         Email: AGENCY@CHANGHANG.CN
>                         -----------------------------------------------
> Redelivery Location   : REDELY DLOSP ATDNSHINC W/I FOLLOWING RANGES
>
>                         - SKAW/FULL MED MED INCL BLACK SEA, AND CHOPT
>                         - GIB / DURBAN RGE
>                         - PMO / JAPAN RGE
>                         - TAMPA / BAHIA BLANCA RGE INCL USG/CARRIBS/EXCL.
> CUBA
>                         - AUSTRALIA/NEW ZEALAND RANGE
>                         - VANCOUVER/CALLAO RANGE
>                         - DURBAN/PMO RANGE
>
> Redelivery Notices    : CHRRS ARE TO GIVE OWS NOT LESS THAN 30/20/15/10 AND
>                         5/3/2/1 DEF DAYS NOTICE OF VESSEL'S EXPECTED DATE OF
>                         RE-DELIVERY, AND PROBABLE PORT (AS PER BASED
> C/P LINES
>                         55-56).
>                         -----------------------------------------------
> Period                : Period charter for abt 9-11 months chopt
>                         -----------------------------------------------
> Charterers            : MAC NAVIGATION LTD
>                         C/O
>                         DOMINION INT/L SERVICES INC.
>                         1, PALEA POSIDONOS AVE.
>                         & 3 MORAITINI STR. BLDG K1
>                         1ST FLOOR
>                         DELTA FALIROU
>                         175 61 PALEO FALIRO
```

2

```
>      `                  ATHENS
>                         GREECE
>
>                         TELEPHONE      : 00 30 210 480 5500 (30 LINES)
>                         FAX            : 00 30 210 480 5503
>                         E-MAIL INTERNET: OPERATION(AT)DOMINION.GR
> OPERATIONS DEPT.
> ===============
> CAPT.N.CHAZAPIS      A.O.H  0030-210-4122179   MOBILE 0030-6944-536516
> MR.YANNIS ELEFTHERIOU   "         210-9631497       "        -6945-298457
> MR YANNIS KALOSSAKAS    "         210-9621636       "        -6945-757193
> CAPT. YANNIS BOUKOUVALAS  "       210-9353052       "        -6944-536513
>
>                         ----------------------------------        `
> Brokers               : ATLANTIC SHIPBROKERS
>                         ----------------------------------------------
> Hire                  : HIRE USD 38,000 DIOT PAYABLE EVERY 15 DAYS IN
> ADVANCE.
>                         ---------------------------------------------
> Commissions           : 3.75 PCT  ADD COMM PLUS 1.25 PCT TO MESSRS, ATLANTIC
>                         SHIPBROKERS (MESSRS ATLANTIC SHIPBROKERS WILL
>                         COLLECT THEIR SHARE OF COMMISSION FM CHRRS).
>
> --------------------------------------------------        `
> Conditions of payment : EVERY 15 DAYS IN ADVANCE
>
> ---------------------------------------------------
> FULL BANKING DETAILS  :
>
>                         Ben Fax Nr. for Hire Conf:
>
>
> ---------------------------------------------------
> Hire to be paid from  :
>                         ---------------------------------------------------
>         Address/Account :
>                         ---------------------------------------------------
> Bunkers               : onboard    on delivery    on board on re-delivery
>                         fuel-mt    gasoil-mt       fuel-mt    gasoil-oil
> quantities            :  PLS        SEE           BUNKER     CLAUSE
>                         ---------  ----------      -----------------------
> Prices per m/t        :
>                         ---------  ----------      --------   ----------
>
>
>                                                             `
>
> Estimated :
> =========
>
>
> Voyage duration       : ABT DAYS      Recap IT NO. :
>
>                         ---------------         ----------------------
> Disbursement loading  :
>                         ---------------------------------------------
> Disbursements disch   :
>                         ------------------------------------------
> Bunkers Clause        : BUNKER ON DELIVERY AS ON BOARD. ESTIMATED BUNKER ON
>                         DELIVERY QUANTITY ABOUT 700 -  750 METRIC TONS OF
>                         IFO AND ABOUT 100 METRIC TONS OF MDO.
>                         BUNKER ON REDELIVERY QUANTITY TO BE ABOUT 410 METRIC
>                         TONS OF IFO AND ABOUT 62.5 METRIC TONS OF MDO.
> BUNKER
>                         PRICES USD 410 PER METRIC TON FOR IFO AND FOR
> MDO USD
>                         710 PER METRIC TON BOTH ENDS.
>                         CHARTERERS HAVE THE OPTION TO BUNKER VESSEL PRIOR TO
>                         DELIVERY PROVIDED THAT DOES NOT INTERFERE WITH
                                        3
```

> OWNÈRS'
>
>                          NORMAL OPERATION.
>
> ------------------------------------------------------------
> I.L.O.H.C.           : IN LIEU OF HOLD CLEANING USD 5,000 LUMPSUM EXCLUDING
>                        DISPOSAL/REMOVAL DEBRIS/BARKS/LASHING DUNNAGES
>                        MATERIALS. (AS PER BASED C/P CL.66)
>
>
>    INTERMEDIATE HC CLAUSE AS FOLLS:-
>    IF REQUIRED BY CHARTERERS, INTERMEDIATE HOLD CLEANING TO BE PERFORMED BY
>    VESSEL'S CREW PROVIDED THAT SUFFICIENT TIME IS AVAILABLE AND THAT
> THE LOCAL
>    LABOUR AND/OR PORT REGULATIONS AND WEATHER CONDITIONS BETWEEN
> PREVIOUS FINAL
>    DISCHARGE PORT AND SUBSEQUENT LOADING PORT PERMITS. ALTHOUGH THE
> MASTER AND
>    CREW ARE NOT RESPONSIBLE FOR THE RESULT OF INTERMEDIATE HOLD
> CLEANING AND/OR
>    THE ACCEPTANCE OF SURVEY ON HOLD CONDITION, THE MASTER / CREW SHALL
> DO THEIR
>    BEST IN CLEANING CARGO HOLDS AND OTHER STAINED PARTS IN ORDER TO MAKE THE
>    VESSEL'S CARGO HOLDS ACCEPTABLE TO SURVEYOR/INSPECTOR FOR CARGO LOADING.
>    CHARTERERS TO PAY OWNERS LUMP SUM USD600 PER HOLD FOR GRAIN CARGOES AND
>    LUMP SUM USD800 PER HOLD FOR OTHER NORMAL CARGOES EXCEPT DIRTY CARGOES
>    AND LUMP SUM USD1,500 PER HOLD FOR DIRTY CARGOES INCLUDING BUT NOT LIMIT
>    TO CEMENT/CLINKER/SULPHUR/PETCOKE/SALT/CONCENTRATE FOR INTERMEDIATE HOLD
>    CLEANING EXCLUDING RMOVAL OF DUNNAGE / LASHING / DEBRIS AND LOG
> BARKS. IT IS
>    EXPLICITLY UNDERSTOOD THAT OWNS / VSL IS NOT RESPONSIBLE FOR THE
> DISPOSAL OF
>    DUNNAGE / LASHING MATERIAL / DEBRIS AND LOG BARKS.
>                     ------------------------------------------------
>
> Representation Exps  : CHRRS PAYING USD 1500 MONTHLY FOR
> CABLES/ENTERTAINING/
>                        VICTUALLING (AS PER BASED C/P LINE 84).
>
>
> ------------------------------------------------------
> Antitechnicality Cl. :
> - Non-Payment of Hire Clause for Time Charter Parties
> (a)  If the hire is not received by the Owners by midnight on the due
> date, the Owners may immediately following such non-payment suspend
> the performance of any or all of their obligations under this Charter
> Party (and, if they so suspend, inform the Charterers accordingly)
> until such time as the payment due is received by the Owners.
> Throughout any period of suspended performance under this Clause, the
> Vessel is to be and shall remain on hire. The Owners' right to suspend
> performance under this Clause shall be without prejudice to any other
> rights they may have under this Charter Party.
> (b)  The Owners shall notify the Charterers in writing within 24
> running hours that the payment is overdue and must be received within
> 72 running hours from the time hire was due. If the payment is not
> received by the Owners within the number of running hours stated, the
> Owners may by giving written notice within
> 12 running hours withdraw the Vessel.  The right to withdraw the
> Vessel shall not be dependent upon the Owners first exercising the
> right to suspend performance of their obligations under this Charter
> Party pursuant to sub- clause (a). Further, such right of withdrawal
> shall be without prejudice to any other rights that the Owners may
> have under this Charter Party.
> (c)  The Charterers shall indemnify the Owners in respect of any
> liabilities incurred by the Owners under the Bill of Lading or any
> other contract of carriage as a consequence of the Owners' suspension
> of and/or withdrawal from any or all of their obligations under this
> Charter party.
> (d)  If, notwithstanding anything to the contrary in this Clause, the
> Owners choose not to exercise any of the rights afforded to them by
> this Clause in respect of any particular late payment of hire or a

4

```
> series of late payments of hire, this shall not be construed as a
> waiver of their right either to suspend performance under sub-clause
> (a) or to withdraw the Vessel under sub-clause
> (b)
> in respect of any subsequent late payment under this Charter Party.
>                     ------------------------------------------------
> Form of C/P          : CP DETAILS BASED ON TOLMI / NBCL NYPE CP DATED 25
> MAY
>                        2007, AND ADDENDUM NO1 DATED 9TH AUGUST'07 LOGICALLY
>                        AMENDED AS PER MAIN TERMS ABOVE, WITH ADDENDUM
>
> TERMS TO
>                        SUPERCEDE RELEVANT CLAUSES IN THE RIDERS, EXCEPT
>                        TRADING EXCL CLAUSE 7)
>                        IN ADDENDUM : DELETE 'LIBYA' AND INSERT
>                        "LIBYA WILL NOT BE AN EXCLUDED TRADING AREA AS
> LONG AS
>                        THERE ARE NO  SANCTIONS AGAINST HER AND AS
> LONG AS SHE
>                        IS NOT AN ADDITIONAL PREMIUM  AREA FOR WAR RISK
>                        INSURANCE. CURRENTLY NEITHER OF THESE CONDITIONS
>                        APPLY AND OWS HAVE NO OBJECTION FOR THE VESSEL TO
>                        PROCEED TO LIBYA"
>                     ------------------------------------------------
> Remarks              : - ADDITIONAL CLAUSES AS ATTACHED TO RECAP MESSAGE TO
>                          APPLY
>                        - CARGO/TRADING EXCLUSIONS AS PER BTB CP /
> ADDENDUM AND
>                          ADDITIONAL 3 PAGES FAX ATTACHED TO RECAP MESSAGE.
>
> - Any cargo claim to be settled in accordance with the Inter club N.Y.P.E.
>   Agreement 1996 but subject to notification of claims within fifteen months
>   of cargo discharge instead of the two years provided by the Interclub
>   Agreement shippers' / receivers risk responsibility and expense and
> without
>   liability on the part of the vessel or her Owner for any loss or damage's
>   expense or delay whatsoever and however caused.
>   (AS PER BASED C/P CL.73 CLAIMS).
>
> - Weather Routeing Clause for Time Charter Parties
> (a)  The Vessel shall, unless otherwise instructed by the Charterers,
> proceed by the customary route, but the Master may deviate from the
> route if he has reasonable grounds to believe that such a route will
> compromise the safe navigation of the Vessel.
> (b)  In the event the Charterers supply the Master with weather
> routeing information, although not obliged to follow such routeing
> information, the Master shall comply with the reporting procedure of that service.
>
> - Clause 81
> Charterers are entitled to deduct from hire payment Owners' expenses
> Usd 1,000 per port without Owners' authority, however, Owners'
> expenses are in excess of Usd 1,000 Owners to appoint their own agent
> at relevant port.
>
>
> - ANY EXTRA AND / OR ADDITIONAL WAR RISK INSURANCE PREMIUM CHARGED BY OWS'
>   INSURANCE BROKER BY REASON OF VSL'S TRADING UNDER THIS C/P TO BE FOR CHRRS
>   ACCOUNT AND TO BE REFUNDED TO OWS BY CHRRS UPON RECEIPT OF COPIES OF OWS
>   INSURANCE BROKERS NET INVOICES. ANY CREW WAR BONUSES APPLICABLE BY REASON
>   OF VESSEL TRADING UNDER THIS C/P TO BE REFUNDED TO OWS BY CHRRS AGAINST
>   DOCUMENTATION.
>
> --------------------------------------------------
>
> Description of vessel
> =====================
> Call Letters         : SYXL          Port Reg./NO: PIRAEUS
>                                                    OFFICIAL NR:
>
```

```
          -----------             ----------      -------
> Flag             : GREEK            Class: DNV + 1A1 BULK/CONTAINER
>                                            CARRIER HCIE ICE IC EO
>                                            HOLDS 2&4 MAY BE
>
> EMPTY
>
>                                     IMO NO: 8117615
>                 --------------      --------------------
> DWT/DRAFT       : SUMMER    30,946 M/T   DRAFT      : 10.33 MTRS
>                   TROPICAL  31,910 M/T   DRAFT      : 10.54 MTRS
>                   WINTER    30,047 M/T   DRAFT      : 10.11 MTRS
>
>                   TPC/TPI: 43.3MT
>
>                 TYPE : SINGLE DECK / OPEN HATCH / BOX HOLD
> BULK CARGO
>                       AND TIMBER CARRIER / FULLY OSHA FITTED FOR
>                       1,100 TEU (30 REEFER POINTS) DOUBLE HULLED
>                 -----------------      ------------------
> Built           : DEC/1989
>                 -----------------------------------
> Grt/Nrt         : GT / NT: 21,305 / 10,412
>                   SUEZ   : 20,498 / 17,197
>                   PANAMA : 21,544 / 15,480
>                 ---------------
> Speed           : 13.0 KNOTS
> SEA  CONS       : HFO   26   MT + 2.5 MT MDO
> PORT CONS       : IDLE   2.5 MT MDO
>                   WORKING 5 MT MDO + 1 MT FO FOR BOILER
>                   for reefers extra 1,5mt do/day
>                 ------------------------------------------------
> CAPACITIES      : FRESH WATER : 280  M/T
>                   HFO CAP     : 2000 M/T
>                   MDO CAP     : 200  M/T
>                 ------------------------------------
> Bunker Specs    : FUEL  : 380 CST ISO 8217 RMG 35
>                   DIESEL: DMB
>                 ------------------------------------
> Constants       : 500 M/T
>                 -------------------- Number of hold/hatch  : 5
>
> HO / 5 HA
> HOLDS CAPACITY       GRAIN              BALE
> NO 1.         201,389 /  5,702     198,635 /  5,624
> NO 2.         274,630 /  7,833     267,236 /  7,567
> NO 3.         273,571 /  7,749     265,470 /  7,517
> NO 4.         274,024 /  7,759     265,470 /  7,517
> NO 5.         275,588 /  7,804     272,078 /  7,704
>                 ----------------     ----------------
> TOTAL CU FT/MT 1,301,303 / 36,847    1,268,890 / 35,930
>
> HOLDS' SIZES IN MTRS   LENGTH      BREADTH          HEIGHT
> 1.                     25.4     7.4FWD/18AFT          13.92
> 2.                     25.0        22.6
> 3.                     24.8        22.6
> 4.                     24.8        22.6
> 5.                     25.6     22.6FWD/17.6AFT (Shelved)
>
> HATCHES' SIZES IN MTRS LENGTH      BREADTH
> 1.                     19.6      18.2 (Narrowing to 12.90m FWD)
> 2.                     19.20       22.80
> 3.                     19.20       22.80
> 4.                     19.20       22.80
> 5.                     19.20       22.80
>                 ------------------------------------
> Cargo Gear      : CRANES 5X25 TONS
>                   CARGO GEAR TYPE: ELECTROHYDRAULIC OPENSTEIN KOPEL
>
```

```
>                     MAX OUTREACH   : ABT 25MTRS
>
>         CRANES CAN OPERATE 360 DEGREES AND SERVE ALL HATCHES
>             NO 1 CRANE LOCATED BETWEEN  NO 1 / 2  HATCH
>             NO 2    "       "      "    NO 2 / 3  HATCH
>             NO 3    "       "      "    NO 2 / 3  HATCH
>             NO 4    "       "      "    NO 4 / 5  HATCH
>             NO 5    "       "      "    NO 4 / 5  HATCH
>             ------------------------
> Loa/Beam          : LOA: 184.905M / BM:27.503M
>             ------------------------
> P + I Club        : UK CLUB (OWS)
>
>     P&I Club of Nobel Bulk Carriers Limited (Disponnent Owners):
>
>         Steamship Mutual Management (Hong Kong) Limited
>         Representative of
>         Steamship Mutual Management (Bermuda) Limited
>         Managers for & on behalf of
>         The Steamship Mutual Underwriting Association (Bermuda) Limited
>             ----------------------------
> H + M Value       : UWRS: LLOYDS / ILU
>                     VALUE USD: 17,000,000
>             --------------------------
> Crew Members      : TOTAL CREW 24 / GREEK + PHILIPPINES
>             --------------------------
> MASTER'S NAME     : NIKOLOPOULOS GERASIMOS
>             ------------------------- VSL'S CONTACT DETAILS
> : INMARSAT C: 423992910
>                 FAX      : +874-763263865
>                 TEL      : +870-763263864
>                 E-MAIL   : TOLMI@GTSHIPS.COM
>             ------------------------
> VSL'S PREVIOUS NAME  : FINWOOD
>
>
>
>
>
```

------------------------------------------------------------------------
This message may contain confidential, proprietary or legally privileged information and
is intended only for the use of the addressee named above. No confidentiality or privilege
is waived or lost by any mistransmission. If you are not the intended recipient of this
message you are hereby notified that you must not use, disseminate, copy it in any form or
take any action in reliance on it. If you have received this message in error please
delete it and any copies of it and notify Mac Navigation Ltd immediately.

*Atlantic Shipbrokers*

# *Time Charter*

## GOVERNMENT FORM

### *Approved by the New York Produce Exchange*
*November 6th, 1913 -- Amended October 20th, 1921; August 6th 1931; October 3rd, 1946*

1. *This Charter Party*, made and concluded in.......**London**........ **20th** day of...**September**.........~~19~~ 2007
2. Between **Nobel Bulk Carriers Ltd of Hong Kong as Timecharter Owners** ...................................................
3. Owners of the good *Vessel's full description See Clause 31.* ...~~Steamship~~/Motorship  **TOLMI** ...of *Greek* ......
4. of ........~~tons gross register, and~~ ....................~~tons net register, having engines of~~ ................. ~~indicated horse power~~
5. ~~and with hull, machinery and equipment in a thoroughly efficient state, and classed~~... ..............................................
6. ~~at...............of about...................cubic feet~~ ~~bale capacity, and about~~ ............................................. ~~tons of 2240 lbs.~~
7. ~~deadweight capacity — (cargo and bunkers, including fresh water and stores not exceeding — one and one half~~
   ~~percent of ship's deadweight capacity,~~
8. ~~allowing a minimum of fifty tons) on a draft of~~................feet.....inches on...........~~Summer freeboard, inclusive of~~
   ~~permanent bunkers,~~
9. ~~which are of the capacity of about~~...........~~tons of fuel, and capable of steaming, fully laden, under good weather~~
10. ~~conditions about~~ .....~~knots on a consumption of about~~ ...~~tons of~~ ~~best Welsh coal best grade fuel oil best grade~~
    ~~Diesel oil,~~
11. now *trading* ...........................................................................................................................................
12. ...................................and ...**McTaggart Shipping and Management Co. Ltd.,** Charterers of the City of...**London**...
13.     *Witnesseth*, that the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the
    time of delivery, for
14.     ~~about~~ *For a period of about 9-11 months at Charterers' option ('About' means 15 days more or less)*
    *Charterers' option deck loading, Charterers' option not always safely afloat but safely aground as per*
    *Clause 6 of Nype 46 Charter Party. Deck loading at Charterers' risk and expense* within below mentioned
    trading limits.
15. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but
    Charterers remaining responsible for
16. The fulfilment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver*
    *of Owners' obligations hereunder.*
17. Vessel to be placed at the disposal of the Charterers, ~~at~~ *on dropping last outward sea pilot C.J.K. China,  any*
    *time day or  night, Sundays and  Holidays included.  Owners confirm that delivery point will not*
    *involve any   outbound expenses/pilotages etc* ...........................................................................
18. ......................................................................................................................................................
19. ~~in such dock or at such wharf  or place (where she may safely lie, always afloat, at all times of tide, except as~~
    ~~otherwise provided in clause No. 6) as~~
20. ~~the Charterers may direct.  If such dock, wharf or place be not available time to count as provided for in clause~~
    ~~No. 5.~~ Vessel ~~on her delivery~~  arrival 1st load port  to be
21. ready *and fit in every way to receive and carry any permissible cargo and to be maintained in such*
    *condition during the entire period of this charter* ~~to receive cargo  with clean swept holds  — and~~ tight,
    staunch, strong and in every way fitted for the service,   having water ballast, and  ~~winches~~ *cranes* and
22. donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to
    run all the ~~winches~~ *cranes* at one and the same
23. time (and with full complement of officers    seamen, engineers and firemen for a vessel of her tonnage), to be
    employed, in carrying lawful merchan-
24. dise, ~~including petroleum or its products, in proper containers~~, excluding **See Clause 64** ..................................

25. ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

26. ~~all necessary fittings and other requirements to be for account of Charterers),~~ in such lawful trades, between safe port and/or ports ~~in British North~~

27. ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~

28. ~~Mexico, and/or South America~~ ......................................................................................................... ~~and/or Europe,~~

29. ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~

30. ~~October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,~~

31. *World wide trade within Institute Warranty Limits, see Clause 61*...............................................................

32. .........................................................................................................................................................

33. .........................................................................................................................................................

34. as the Charterers or their Agents shall direct, on the following conditions :

35.     1. That the Owners shall provide and pay for all provisions, wages, and    consular shipping and discharging fees of the crew ;  shall pay for the

36. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores,  including boiler water, and maintain her class and keep

37. the vessel in a thoroughly efficient state in hull, *cargo spaces,* machinery and equipment for and during the service.

38.     2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges Pilotage  Agencies, *canal tolls,* Commissions,

39. Consular Charges (except those pertaining to    the Crew), and all other usual expenses except those before stated, but when the vessel puts into

40. a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

41. illness of crew *or cargoes carried prior to delivery* to be for Owners account  . Fumigation ordered because of cargoes carried or ports visited while vessel is employed under this

42. charter to be for Charterers account  . All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

43. of six months or more.

44.     Charterers are to provide necessary dunnage, ~~and shifting boards,~~ also any extra fittings requisite for a special trade or unusual cargo, but

45. Owners to allow them the use of any dunnage and ~~shifting boards~~ already aboard vessel.  ~~Charterers to have the privilege of using shifting boards~~

46. ~~for dunnage, they making good any damage thereto.~~

47.     3. That the Charterers, ~~at the port  of~~ *on* delivery, and the Owners, ~~at the port of~~ *on* re-delivery, shall take over and pay for all fuel   remaining on

48. board *and further as per Clause 55* ~~the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ..................... tons and not more than~~

49. ~~.........tons and to be re-delivered with not less than.................................... tons and not more than.......................... tons.~~

50.     4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *Sea Clause 29* ...............

51. ~~...United States Currency per.. ton on vessel's total deadweight carrying capacity, including bunkers and~~

52. ~~stores, on.......................................... summer freeboard, per Calendar Month, commencing on and from the day  of her delivery, as aforesaid, and at~~

53. ~~and after the same rate for any part of a  month; hire to continue until the  hour  of the day of her re-delivery In like good order and condition, ordinary wear and tear excepted, to the Owners (unless lost) at~~  *Redelivery: on*

*dropping last outward sea pilot any time day and night Sundays and holidays included within following ranges: Skaw / Full Mediterranean including Black Sea, and at Charterers' option, Gibraltar / Durban range, Passing Muscat Outbound / Japan range, Tampa / Bahia Blanca range including US Gulf / Caribbean Sea / excluding Cuba, Australia / New Zealand range, Vancouver / Callao range, - Durban / Passing Muscat Outbound range*

54. unless otherwise mutually agreed. Charterers are to give Owners not less than *30/20/15/10 and 5/3/2/1 definite* days

55. notice   of vessels expected date of re-delivery, and probable port

56.     5. Payment of said hire to be made *as per Owners banking' details*   ~~in New York~~ in cash in United States Currency, *every 15 days*   ~~semi-monthly~~ in advance, and for the last   half month or

57. part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

58. due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

59. hire, or bank guarantee, ~~or on any breach of this Charter Party,~~ the Owners shall be at liberty to withdraw the vessel from the service of the Char-

60. terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. *See Clause 29* ~~Time to count from 7 a.m. on the working day~~

61. ~~following that on which written notice of readiness has being given to the Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

62. ~~to have the privilege of using the vessel at once, such time used to count as hire.~~

63.     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, *subject to Owners' approval,* by the Charterers or their Agents, *at their discretion,* subject

64. to 2 1/2 % commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

65. of such advances. .

66.   6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe*  place *in port or elsewhere* that Charterers or their agents may

67. direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

68. lie aground. *See additional NAABSA Clause.*

69.     7. That the whole reach of Vessel's Hold, Decks and usual places of loading (not more than she can reasonably   stow and carry), also

70. accommodations for Supercargo, if carried, shall be at Charterers' disposal reserving only proper and sufficient space for Ship's officers, crew,

71. tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~

72. ~~paying Owners ..................... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

73. ~~incurred in the consequences of carriage of passenger, Charterers are to bear such risk and expense.~~

74.     8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

75. boats. The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and

76. agency; and Charterers are to load, stow, ~~and trim~~  *lash, unlash, secure, unsecure, tally and discharge* the cargo at their expense under the supervision  of the Captain  who is to sign Bills of Lading for

77. cargo as presented, in conformity with Mate's or Tally Clerk's receipts. *However Owners and/or Master to remain responsible for seaworthiness and safety of the vessel.*

78.     9. That if the Charterers shall have the reason to be dissatisfied with the conduct of the Captain, Officers ,or Engineers, the Owners shall on

79. receiving particulars of the complaint, investigate the same, and, if    necessary make a change in the appointments.

80.    10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that the voyages are prosecuted

81. with the utmost despatch.  He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the

82. rate of  *$1 0.00* per day.  Owners to victual Pilots and Custom Officers, and also, ~~when authorised by Charterers or their Agents~~ to victual Tally

83. Clerks,    Stevedore's,    Foremen,    etc.,    Charterers    paying    *USD    1500    monthly    for cables/entertaining/victualling. Charterers and Supercargo to sign Owners Free Pass Agreement* ~~at the current rate per meal—for all such victualling.~~.

84.    11. That the Charterers shall furnish the Captain from  time to time with all requisite instructions and sailing directions, in writing, and the

85. Captain shall keep a full and correct deck   Log of the voyage or voyages which are to be patent to the Charterers or their Agents,   and furnish the Char-

86. terers, their Agents or Supercargo   when required, with a *translated* ~~true~~ copy of *deck and engine logs in English,* ~~daily Logs~~, showing    the course of the vessel and distance run and the con-

87. sumption of fuel

88.  12. That the Captain shall use diligence in caring for the  ventilation of the cargo. *as instructed by the Charterers.*

89.  ~~13. That the Charterers shall have the option of continuing this charter for a further period of~~.............

90.  ..................................................................................................................................... .

91. ~~on giving written notice thereof to the Owners or their Agents~~ ............. ~~days previous to the expiration of the first-named term, or any declared option.~~

92.    14.    That if required by Charterers time not to commence before *5th October, 2007*.......and should vessel

93. not have given written notice of readiness on or  before *15th October, 2007*  but not later than *2400 hours local time* ~~4p.m.~~ Charterers or

94. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *Owners to narrow laycan to 7 day spread latest by 30th September, 2007*

95.    15. That in the event of the loss of time from deficiency *and/or default and/or strikes of officers and crew whether due to labour dispute or otherwise or deficiency of* ~~of men or~~ stores, fire, breakdown or damages to hull, machinery or equipment,

96. grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

97. preventing the full working of the vessel, the payment of hire   shall cease for the time, thereby lost   and if upon the voyage the speed be reduced by

98. defect in or breakdown of any part of her hull, machinery or equipment,   the time so lost, and the cost of any extra fuel consumed in consequence

99. thereof, and all extra  expenses *direct, proven and duly supported by vouchers* shall be deducted from the hire.

100.    16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

101. returned to the Charterers at once.  The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

102. Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation       throughout this Charter Party, always mutually excepted.

103. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate   for the

104. purpose of saving life and property.

105.    17. **Arbitration as per Clause 72** ~~That should any dispute arise between Owners and the Charterers, the~~ ~~matter in dispute shall be referred to—three persons at—New York,~~

106. ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of~~ ~~any two of them, shall be final, and for~~

107. ~~purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be~~ ~~commercial men~~

108.    18. That the Owners shall have a lien upon all cargoes, and all sub-freights **and Sub-hires** for any amounts due under this Charter, including General Aver-

109. age contributions, and the Charterers to have lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

110. deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrances incurred by them or their agents, which

111. might have priority over the title and interest of the owners in the vessel.

112.    19. That all the derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

113. Crew's proportion. General Average shall be adjusted, stated and settled according to ~~Rules 1 to 15, inclusive, 17~~ ~~to 22, inclusive, and Rule F of~~

114. York Antwerp Rules **1994 as revised in London or any subsequent modification thereof** ~~1924, such port or~~ ~~place in the United States as may be selected by the carrier, and as to matters not provided for by these~~

115. ~~Rules, according to the laws and usages at the port of New York. In such adjustments in foreign currencies shall~~ ~~be exchanged into~~

116. ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in~~ ~~foreign currency shall be converted at~~

117. ~~rate prevailing on last day of discharge at the port or place of final discharge of such damaged cargo from the~~ ~~ship. Average agreement or~~

118. ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the~~ ~~goods. Such cash deposits as the carrier~~

119. ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and~~ ~~special charges thereon, shall, if~~

120. ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such~~ ~~deposit shall, at the option of the~~

121. ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall~~ ~~be held in a special account at the~~

122. ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit~~ ~~balances, if any, shall be paid in~~

123. ~~United States money.~~

124.    ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage~~ ~~resulting from any cause whatsoever,~~

125. ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by~~ ~~statute, contract, or otherwise,~~

126. ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to~~ ~~the payment of any sacrifices,~~

127. ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special~~ ~~charges incurred in respect of the~~

128. ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same~~ ~~manner as if such salving ship or~~

129. ~~ships belonged to strangers~~ **See New Jason clause as attached.**.

130.    ~~Provisions as to General Average in accordance with the above—are to be included in all bills of lading issued~~ ~~hereunder.~~

131.    20. Fuel /diesel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and~~
~~stoves~~ to be agreed to as to quantity, and the

132. cost of   replacing same, to be allowed by Owners.

133.    ~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter,~~
~~vessel is to be docked at a~~

134. ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary at least once in~~
~~every six months, reckoning from~~

135. ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

136. **See Clause 78**............................................  ....................................................................

137. ........................................................  ........................................................

138.    22.     Owners shall maintain the gear of the ship as fitted, providing  gear (for all **cranes** ~~derricks~~) capable
of handling lifts  up to **maximum capacity in accordance with Desription Clause**   ~~three tons , also~~

139. ~~providing ropes, falls, slings and blocks — If vessel if fitted with derricks capable of handling heavier lifts, Owners~~
~~are to provide necessary gear for~~

140. ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on
the vessel **sufficient light as on board for** ~~lanterns and oil—for~~

141. ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over these on board to~~
~~be at Charterers' expense. The~~

142. Charterers to have the use of any gear on board the vessel.

143.    23.  Vessel to work night and day, **Sundays and Holidays included,** if required by Charterers', and all
winches to be at Charterers'  disposal during loading and discharging ; **All winchmen/cranemen to be
provided and paid by the Charterers. Watchmen ordered by the Master to be for Owners' account. All
other watchmen including compulsory to be for Charterers' account.**

144. ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to~~
~~pay officers, engineers, winchmen,~~

145. ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the~~
~~ship's articles. If the rules of the~~

146. ~~port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event~~
~~of a disabled winch or winches, or~~

147. ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and~~
~~pay any loss of time occasioned~~

148. ~~thereby. See Clause 45.~~

149.    ~~24. It is also mutually agreed that this Charter is subject to all terms and provisions of and all the exemptions~~
~~from liability contained~~

150. ~~in the Act of Congress of United States approved on the 13th day of February, 1893, and entitled "An Act~~
~~relating to Navigation of Vessels,~~

151. ~~etc," in respect of all cargo shipped under this charter to or from the United States of America. It is further~~
~~subject to the following clauses, both~~

152. ~~of which are to be included in all bills of lading issued hereunder :~~

153.                          ~~U.S.A. Clause Paramount~~

154. ~~This bill of lading shall have effect subject to the provisions of the Carriage of goods by Sea Act of United States,~~
~~approved April 16,~~

155. ~~1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a~~
~~surrender by the carrier of any~~

156. ~~rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill~~
~~of lading~~

157. ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

158.                          ~~Both to Blame Collision Clause~~

159. ~~If the ship comes into collision with another ship as a result of the negligence of other ship and any act, neglect or~~
~~default of the~~

160. ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the Owners of the goods carried~~

161. ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~

162. ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~

163. ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~

164. ~~owners as part of their claim against the carrying ship or carrier.~~ **See Both to Blame Collision Clause as attached.**

165.    25. The vessel shall not be required to enter any ice-bound port or any port   where lights or light-ships have been or are about to be with-

166. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

167. port or to get out after having completed loading or discharging.  *Trading always via ice free port(s) and vessel not to follow ice breaker(s) See Clause 61*

168.    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers.  The owners to remain responsible for the

169. navigation of the vessel, *acts of pilots and tugboats* insurance, crew, and all other matters, same as when trading for their own account.

170.    27. A commission of *1.25*  ~~2½~~ per cent is payable by the Vessel and Owners to *MAtlantic Shippers, London* ..................................................................................................................

171. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

172.    28. An address commission of *3.75* ~~—2½~~ per cent payable to *Charterers* on the hire earned and paid under this Charter.

**Additional Clauses 29 to 83, Bimco ISM Clause, Bimco ISPS Clause for Time Charter Parties, Bimco Stowaway Clause, Conwartime 2004 Clause, War Cancellation Clause 2004, Bimco Stevedore Damage Clause, Bunker Fuel Sulphur Content Clause, Bimco Non-Payment of Hire Clause, Bimco Weather Routing, New Jason Clause, General Paramount Clause, Bimco Y2K Clause, Bimco Standard Law and Arbitration Clause 1998 English Law London Arbitration to apply. General Average shall be adjusted, stated and settled according to year 1994 or any subsequent modification thereof in London and New Both-to-Blame Collision Clause, all as attached to be included in all Bills of Lading issued under this Charter Party.**

                                                                    The Charterers:

**The Owners:**

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of this original document which can be modified, amended or added to only by the striking out of original charterers, or the insertion of new characters, such characterers being clearly highlighted by underlining or use of color or use of larger font and marked as having been made by the licence or end user as appropriste and not by the author.

# Ex. B

# CREDIT SUISSE



1211 Genève 70
11 MAR 2008

Questions conc. this advice:
TEL 022 393 3931
Our reference:
UPIC    0251-0311-22-27515-0001 0251
Your reference:

Dominion International Serv.Inc
Attn Patricia Foster
1 Palea Posidonos Ave
& 3, Moraitini str.Blg K1,1st fl.
GR-17561 Paleo Faliro

## CREDIT ADVICE

| Account No. | 905315-82 | USD |
| --- | --- | --- |
| IBAN | CH65 0483 5090 5315 8200 0 | |

Current account Trade Finance

HOLDER
Mac Navigation Ltd
Road Town
VG-Tortola
Virgin Islands (Brit)

VAL 11 MAR 08 USD                     1,061,265.00
*******************************

BY ORDER OF:                 DETAILS OF PAYMENT:
BROBULK LIMITED              /RFB/MV TOLMI
C/O WALCOT HOUSE
WEST DRIVE
VIRGINIA WATER GU25 4ND

YOURS TRULY

CREDIT SUISSE

Form without signature

# CREDIT SUISSE

1211 Genève 70
27 MAR 2008

Questions conc. this advice:
TEL 022 393 3931
Our reference:
UPIC    0251-0327-22-70023-0001 0251
Your reference:

Dominion International Serv.Inc
Attn Patricia Foster
1 Palea Posidonos Ave
& 3, Moraitini str.Blg K1,1st fl.
GR-17561 Paleo Faliro

## CREDIT ADVICE

| | | |
|---|---|---|
| Account No. | 905315-82 | USD |
| IBAN | CH65 0483 5090 5315 8200 0 | |
| Current account Trade Finance | | |

HOLDER
Mac Navigation Ltd
Road Town
VG-Tortola
Virgin Islands (Brit)

VAL 27 MAR 08 USD                    556,236.97
*****************************************

BY ORDER OF:                    DETAILS OF PAYMENT:
BROBULK LIMITED                 /RFB/TOLMI - HAWKNET
C/O WALCOT HOUSE
WEST DRIVE
VIRGINIA WATER GU25 4ND

YOURS TRULY

CREDIT SUISSE

Form without signature

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

## Clause 29 – Hire / Period

A) Charterers shall pay for the use of the vessel at the rate USD 38,000 daily including overtime payable 15 days in advance. First hire and bunkers on delivery to be paid within 3 banking days after delivery.

B) It is agreed that the hire is to be considered correctly paid upon receipt of same to Owner's bankers as stated hereunder:

Bank details for hire and bunker payments:
The Hong Kong and Shanghai Banking Corporation Limited
A/C Name: Nobel Bulk Carriers Limited

A/C No.: 004-110-849320-838 (USD SAV)

Swift Code: HSBCHKHHHKH

However, in the event of the default in the payment of hire, Owners are to telex Charterers informing them of the default. Owners are not to withdraw the vessel if Charterers make good the default within three clear bank working days of receiving Owner's notification.

C) Deleted

D) Deleted

E) Deleted

## Clause 30 – Notices

Owners/Master shall give notice on fixing and then 5 days approximate and 3/2/1 days definite of delivery to Charterers, via broking channels, and others if requested.

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

## Clause 31 – Vessel's Description

M/V TOLMI

| | | | |
|---|---|---|---|
| OWNERS | : WESTDENE MARITIME LTD. (ISLE OF MAN) | MANAGERS | :DOIL STEAMSHIP PIRAEUS |
| | | AGENTS | :LIBERTY MARITIME LTD |
| | | P & I CLUB | : UK CLUB |
| UWRS | : LLOYDS / ILU | CLASS | : DNV+1A1 BULK/CONTAINER |
| VALUE USD | : 17,000,000 | | CARRIER HCIE ICE IC EO |
| IMO NO: | : 8117615 | | HOLDS 2&4 MAY BE EMPTY |

| | | | |
|---|---|---|---|
| | | CALLSIGN | : SYXL |
| FLAG | : GREEK | INMARSAT C | : 423992910 |
| PORT / NO | : PIRAEUS | TYPE | : SINGLE DECK / OPEN |
| BUILT | : DEC/1989 | | HOLD BULK CARGO AND TIMBER |
| | HATCH / BOX | | CARRIER / FULLY OSHA FITTED |
| LBP | : 175.44M | | |
| LOA | : 184.905M | | |
| FOR | | | 1,100 TEU (30 REEFER POINTS) |
| | | | DOUBLE HULLED |

| | | | |
|---|---|---|---|
| | | ACC/ENGINE | : AFT |
| | | BULBOW | : FITTED |
| BEAM (MLD) | : 27.503M | | |
| DEPTH | :14.514M | | |
| DEADWEIGHT | : SUMMER    30,946 M/T | DRAFT | : 10. 33 MTRS |
| | : TROPICAL  31,910 M/T | DRAFT | : 10. 54 MTRS |
| | : WINTER    30,047 M/T | DRAFT | : 10.11 MTRS |
| TPC/TPI | : 43.3MT | | |
| | | FRESH WATER | : 280 M/T |
| CONSTANTS | : 500 M/T | MDO CAP | : 200 M/T |
| HFO CAP | : 2000 M/T | | |
| | | SUEZ | : FITTED |
| GT / NT | : 21, 305 / 10,412 | PANAMA | : FITTED |
| SUEZ | : 20,498 / 17,197 | AUSSIE | : FITTED |
| PANAMA | : 21,544 / 15,480 | | |

GEAR             : CRANES 5X25 TONS
CARGO GEAR TYPE : ELECTROHYDRAULIC OPENSTEIN KOPEL
MAX OUTREACH : ABT 25MTRS

CRANES CAN OPERATE 360 DEGREES AND SERVE ALL HATCHES
NO 1 CRANE LOCATED BETWEEN          NO 1 / 2  HATCH

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

| | | | | |
|---|---|---|---|---|
| NO 2 | " | " | " | NO 2 / 3  HATCH |
| NO 3 | " | " | " | NO 2 / 3  HATCH |
| NO 4 | " | " | " | NO 4 / 5  HATCH |
| NO 5 | " | " | " | NO 4 / 5  HATCH |

TYPE OF HATCH COVERS: MCGREGOR -NAVIRE

| | | | |
|---|---|---|---|
| *ENGINE* | : SULZER | *TYPE* | : 6RTA58 |
| *BUILT* | : SULZER WINTERTHUR | | |
| *SPEED* | : 13.0 KNOTS | *R.P.M.* | : 9152 BHP 116 RPM |
| *SEA CONS* | : HFO 26MT+2.5MT MDO | *PORT CONS* | :IDLE 2.5MT MDO |

:WORKING  5MT  MDO+1  MT  FO  FOR BOILER
   for reefers extra 1,5mt do/day

| | | | |
|---|---|---|---|
| *FUEL* | : 380 CST ISO 8217 RMG 35 | *DIESEL* | : DMB |
| | | *BOWTHRUSTER:* | 600 KW (VARIABLE PITCH) |

| | | | |
|---|---|---|---|
| *GRAIN* | : FITTED | *CO2* | : FITTED |
| *SMOKE DET* | : YES | *VENT* | : MECH. VENTILATION |
| *BALLAST* | : 10600 MT + 7900MT | | 7 AIRCHANGES / HOUR |
| | NO 3 HOLD FLOODED | | BASIS EMPTY HOLDS |

       HOLDS ARE CO2 FITTED
       WITH DEHUMIDIFIERS

APPENDIX 'B': FITTED

CONTAINERS TOTAL 1100 TEU

TEU INTAKE BASIS 20 MT HOMOGENEOUS   629 IN HOLDS + 471 ON HATCHES
"   "   "   13 MT     "      FULL CAPACITY
"   "   "   10 MT     "      FULL CAPACITY
MAX  370  FEU + 360  TEU

| | | | |
|---|---|---|---|
| HOLDS  1 / 2 / 3 / 4/  5 | = | 91/ 135 /135/135 / 133 | = 629 |
| HATCH  1 / 2 / 3 / 4 / 5 | = | 75/ 99 / 99 / 99 / 99 | = 471 |

<u>STRENGTHS</u>       TANK TOP HOLDS 1/3/5 19. 66 MT / M2 – HOLDS 2/4 11.69MT/M2
MAIN DECK: 5.20MT/M2  HATCH COVERS  3. 79 MT/M2

<u>REEFER PLUGS</u>    30 REEFER PLUGS ON HATCHES 4+5 SUPPLYING 380 VOLT 3 PHASE  50 CYCLES AC

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

| HOLDS CAPACITY CU FT/MT | GRAIN | BALE |
|---|---|---|
| NO 1. | 201,389 / 5702 | 198,635 / 5624 |
| NO 2. | 274,630 / 7833 | 267,236 / 7567 |
| NO 3. | 273,571 / 7749 | 265,470 / 7517 |
| NO 4. | 274,024 / 7759 | 265,470 / 7517 |
| NO 5. | 275,588 / 7804 | 272,078 / 7704 |
| | | |
| TOTAL CU FT / MT | 1,301,303 / 36,847 | 1,268,890 / 35,930 |

| HOLDS' SIZES IN MTRS | LENGTH | BREADTH | HEIGHT |
|---|---|---|---|
| 1. | 25.4 | 7.4FWD/18AFT | 13.92 |
| 2. | 25.0 | 22.6 | |
| 3. | 24.8 | 22.6 | |
| 4. | 24.8 | 22.6 | |
| 5. | 25.6 | 22.6FWD/17.6AFT (Shelved) | |

| HATCHES' SIZES IN MTRS | LENGTH | BREADTH |
|---|---|---|
| 1. | 19.6 | 18.2 (Narrowing to 12.90m FWD) |
| 2. | 19.20 | 22.80 |
| 3. | 19.20 | 22.80 |
| 4. | 19.20 | 22.80 |
| 5. | 19.20 | 22.80 |

| TANKTOP CLEAR DIMENSIONS (IN MTRS) | LENGTH | BREADTH |
|---|---|---|
| NO. 1 | 25.4 | 18–12.4-7.4(shelve) |
| NO. 2 | 24.8 | 22.6 |
| NO. 3 | 24.8 | 22.6 |
| NO. 4 | 24,8 | 22.6 |
| NO. 5 | 25.6 | 22.6-17.6(shelve) |

(NO HOPPERS / FRAMES AND CLEAR OF CORRUGATIONS OF BULKHEADS.)

DEADWEIGHT SCALE

| FT  IN | SALT | FRESH |
|---|---|---|
| 34 | 31000 | 30000 |
| 33 | 29650 | 28750 |
| 32 | 28400 | 27500 |
| 31 | 27050 | 26200 |
| 30 | 25800 | 24450 |
| 29 | 24550 | 23700 |
| 28 | 23250 | 22500 |
| 27 | 22000 | 21250 |
| 26 | 20750 | 20050 |

1. NAME OF OWRS/DISPONENT OWRS/MGR/BAREBOAT CHRS IF ANY
Owners: WESTDENE MARITIME LTD. ISLE OF MAN. MANGERS: DOIL STEAMSHIP,

Atlantic Shipbrokers, London

# RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD CHARTER PARTY DATED 20TH SEPTEMBER 2008

PIRAEUS
Disponent Owners : Nobel Bulk Carriers Ltd., of Hong Kong

2. NAME/EX NAME/TYPE/FLAG/CLASSIFICATION/OFFICIAL NO/IMO NO
M/V TOLMI / FINWOOD / OPEN TYPE, BOX HOLD BULK CARGO CARRIER / GREEK
FLAG / DNV+1A1 BULK/CONTAINER CARRIER / IMO:8117615
3. CALL SIGN/INMARSAT SYSTEM AND NBR SYXL/ INMARSAT C: 423992910

4. BLT MONTH/YEAR/YARD, MAKERS/MODEL/HORSEPOWER OF M/E DEC/1989 / GDANSK /
SULZER/6RTA58/RPM 9152 BHP 116 RPM

5. INTERNATIONAL/SUEZ/PANAMA GT/NT
GT / NT      : 21, 305 / 10,412
SUEZ         : 20,498 / 17,197
PANAMA       : 21,544 / 15,480

6. DWT/DFT/TPC ON TROPICAL/SUMMER/WINTER/LUMBER SUMMER SW DEADWEIGHT    :
SUMMER    30,946 M/T    DRAFT: 10. 33 MTRS
: TROPICAL 31,910 M/T    DRAFT:10. 54 MTRS
: WINTER    30,047 M/T    DRAFT: 10.11 MTRS
 TPC/TPI  : 43.3MT

7. VSLS DWT/CORRESPONDING TPC ON DFT 9.0M/9.7M/10M FW
FT  IN                            SALT
    FRESH

| FT IN | FRESH | SALT |
|---|---|---|
| 34 |  | 31000 |
|  | 30000 | 29650 |
| 33 |  |  |
|  | 28750 | 28400 |
| 32 |  |  |
|  | 27500 | 27050 |
| 31 |  |  |
|  | 26200 | 25800 |
| 30 |  |  |
|  | 24450 | 24550 |
| 29 |  |  |
|  | 23700 | 23250 |
| 28 |  |  |
|  | 22500 | 22000 |
| 27 |  |  |
|  | 21250 | 20750 |
| 26 |  |  |
|  | 20050 |  |

8. CONSTANTS INCL/CXCL FW
   CONSTANTS:  500 M/T          FRESH WATER: 280 M/T

Page 5

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

9. HOLDS/HATCHES NO, HATCH COVER TYPE 5HO/5HA MACGREGGOR FOLDING TYPE

10.LOA/BM/GRAIN/BALE (CBM TTL/HOLDWISE)

LOA: 184.905M/BM:27.503M/BALE: HOLDS CAPACITY CU  FT/MT

|  | GRAIN | BALE |
|---|---|---|
| NO 1. | 201,389/ 5702 | 198,635 / 5624 |
| NO 2. | 274,630 /7833 | 267,236/ 7567 |
| NO 3. | 273,571 /7749 | 265,470/ 7517 |
| NO 4. | 274,024 /7759 | 265,470/ 7517 |
| NO 5. | 275,588 /7804 | 272,078/ 7704 |
| TOTAL CU FT / MT | 1,301,303 / 36,847 | 1,268,890 / 35,930 |

11.HEIGHT OF STANCHIONS, INTERVAL OF STANCHIONS N/A

12.DECK BALE CAPACITY, PERMISSIBLE HEIGHT OF DECK CARGO PERMISSIBLE WEIGHT OF
DECK CARGO CONTAINERS TOTAL 1100 TEU

TEU INTAKE BASIS 20 MT HOMOGENEOUS    629 IN HOLDS + 471 ON HATCHES

| "   "   "    13 MT | " | FULL CAPACITY |
| "   "   "    10 MT | " | FULL CAPACITY |

MAX 370 FEU + 360  TEU

HOLDS    1 / 2 / 3 / 4/  5    =    91/ 135 /135/135 /
133   = 629
HATCH    1 / 2 / 3 / 4 / 5    =    75/ 99  / 99 /  99 /
99    = 471

STRENGTHS        TANK TOP HOLDS 1/3/5 19. 66 MT / M2 -
HOLDS 2/4 11.69MT/M2
                 MAIN DECK: 5.20MT/M2   HATCH COVERS  3. 79

MT/M2

13.TANK TOP/DECK/HATCH COVER STRENGTH MAIN DECK/HATCH COVERS DIMENSIONS
HOLDS' SIZES IN MTRS

|  |  | LENGTH  BREADTH | HEIGHT |
|---|---|---|---|
| 1. | 25.4 | 7.4FWD/18AFT | 13.92 |
| 2. | 25.0 | 22.6 |  |
| 3. | 24.8 | 22.6 |  |
| 4. | 24.8 | 22.6 |  |
| 5. | 25.6 | 22.6FWD/17.6AFT (Shelved) |  |

HATCHES' SIZES IN MTRS                    LENGTH   BREADTH

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

1.                        19.6      18.2 (Narrowing to 12.90m FWD)
2.                        19.20    22.80
3.                        19.20    22.80
4.                        19.20    22.80
5.                        19.20    22.80

TANKTOP CLEAR DIMENSIONS (IN MTRS)        LENGTH      BREADTH
            NO. 1   25.4   18-12.4-7.4(shelve)
            NO. 2   24.8            22.6
            NO. 3   24.8            22.6
            NO. 4   24,8            22.6
            NO. 5   25.6   22.6-17.6(shelve)

(NO HOPPERS / FRAMES AND CLEAR OF CORRUGATIONS OF BULKHEADS.)

14.HATCH/HOLD/FLAT TANK TOP DIMENSIONS SEE ABOVE

15.BALLAST TANK CAPACITY, BALLASTING PUMP CAPACITY AND DEBALLISTING PUMP SPEED
(MT/HR)
BALLAST  : 10600 MT + 7900MT

            NO 3 HOLD FLOODED

16.HEIGHT WATERLINE TO TOP OF HATCH COVER UNDER OPEN CONDITION IN LIGHT/HEAVY
BAL LAST (SPECIFY WHICH HOLDS TB FLOODED) 15M

17.CRANE
   A. NUMBER/CAPACITY OF CRANES: 5X25MT
   B. NUMBER/VOLUME OF GRABS: N/A
   C. LOCATION OF CRANES: GEAR          : CRANES 5X25 TONS
   CARGO GEAR TYPE: ELECTROHYDRAULIC OPENSTEIN KOPEL
   MAX OUTREACH : ABT 25MTRS

CRANES CAN OPERATE 360 DEGREES AND SERVE ALL HATCHES
            NO 1 CRANE LOCATED BETWEEN        NO 1 / 2
HATCH
         NO 2      "      "              "
      NO 2 / 3
HATCH
         NO 3      "      "              "
      NO 2 / 3
HATCH
         NO 4      "      "              "
      NO 4 / 5
HATCH
         NO 5      "      "              "
      NO 4 / 5
HATCH

   D. MAX OUTREACH O FHOOK FROM SHIPS SIDE: SEE ABOVE

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

E. WORKING RADIUS: 360 DEGREES
F. CRANE HOOK SPEEDS IN M/SEC, HOSTING WITH MAX/MIN WEIGHTS:

G. SLEWING/LUFFING/HOSTING TIME IN SECONDS: HOISTING TIME:23-55M/MIN
LUFFING TIME: 39SECS FM MAX TO MIN
CYCLES PER HOUR: 1,1 RPM

18.LOCATION OF PILOT BOARDING PASSAGE, IF ANY.N/A

19.SERVICE SPEED/BUNKER CONSUMPTION IN LADEN/BALLAST CONDITION
SPEED        : 13.0 KNOTS
SEA CONS : HFO 26MT+2.5MT MDO

20.BUNKER CONSUMPTION AT PORT IN WORKING/IDLING CONDITION
PORT CONS:IDLE 2.5MT MDO
:WORKING 5MT MDO+1 MT        FO FOR BOILER

 for reefers extra 1,5mt do/day

21.GRADE OF BUNKER IFO/MDO THAT VSL BURNS, BUNKER TANK IFO/MDO CAPA,
   BUNKER IFO/MDO RECEIVING SPEED (MT/HR)
   FUEL        : 380 CST ISO 8217        DIESEL    : DMB RMG 35

22.MANE OF PNI CLUB/VALIDITY DATE COVER, NAME OF H+M INSURERS/H+M INS
   VALUE/VALIDITY DATE COVER :UK CLUB FEB2007-2008

23.ITF FITTED AND ITF AGREEMENT NO.: PNO

24.LAST SPECIAL SURVEY/DRYDOCKING (WHEN/SHERE),
   NEXT SS/DD PLAN(WHEN/WHERE)S/S: 31.12.2004 / PIRAEUS D/D 31.1.2006 / DURBAN

25.LAST PORT STATE CONTROL INSPECTION (WHEN/WHERE) 15.2.2007 / PARANAGUA

26.LAST  CGO : LOGS FROM WEST AFRICA TO ZHANGJIAGANG

27.MASTER/KEY OFFICERS EXPERIENCE OF LOG LOADING/CARRYING: N/A

28.LAST RECORDS OF WAFR LOGS AND OTHER LOGS INCL
   DATE/LP/SPECIES/QTTY: N/A
   IN HOLD/ON DECK RESPECTIVELY WITH HEIGHT OF DECK CGO: N/A

29.FULL ITIN INCL ETA/B/D WITH CGO TB DISCH AT EACH PORT UPTO DELY
   PORT AGENTS AT LAST PORT PRIOR TO DELY WITH TEL/TLX/FAX: EN ROUTE
   TO DALIAN TO DISCHARGE CARGO. ETA 25/5. AGENTS DALIAN: PENAVICO DALIAN
   (CHINA OCEAN SHIPPING AGENCY. TEL: 008641182641688
   THEN ON TO LAST PORT OF DISCHARGE, JINZHOU ETA 27/5. AGENTS JINZHOU
   PASSED ON BY PREVIOUS EMAIL.

30.FUEL OIL TANK SKETCH BELOW TANK TOP OF EACH HOLDS: RVTG

Atlantic Shipbrokers, London

## RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD CHARTER PARTY DATED 20TH SEPTEMBER 2008

Owners agree Charterers nominated rep is free to board the vessel at any time to verify the replies to the above questionaries and will always have access to inspect condition of cargo loaded on board.

CHRS QUESTIONARIES ARE ASF:
 1. NAME OF OWRS/DISPONENT OWRS/MGR/BAREBOAT CHRS IF ANY
Owners: WESTDENE MARITIME LTD. ISLE OF MAN. MANGERS: DOIL STEAMSHIP, PIRAEUS
 2. NAME/EX NAME/TYPE/FLAG/CLASSIFICATION/OFFICIAL NO/IMO NO
M/V TOLMI / FINWOOD / OPEN TYPE, BOX HOLD BULK CARGO CARRIER / GREEK FLAG / DNV+1A1 BULK/CONTAINER CARRIER / IMO:8117615
 3. CALL SIGN/INMARSAT SYSTEM AND NBR
SYXL/ INMARSAT C: 423992910
 4. BLT MONTH/YEAR/YARD, MAKERS/MODEL/HORSEPOWER OF M/E
DEC/1989 / GDANSK / SULZER/6RTA58/RPM 9152 BHP 116 RPM
 5. INTERNATIONAL/SUEZ/PANAMA GT/NT

| | | |
|---|---|---|
| GT / NT | : 21, 305 / 10,412 | |
| SUEZ | : 20,498 / 17,197 | |
| PANAMA | : 21,544 / 15,480 | |

 6. DWT/DFT/TPC ON TROPICAL/SUMMER/WINTER/LUMBER SUMMER SW

| | | | |
|---|---|---|---|
| DEADWEIGHT | : SUMMER   30,946 M/T DRAFT | : 10. 33 MTRS | |
| | : TROPICAL 31,910 M/T DRAFT | : 10. 54 MTRS | |
| | : WINTER   30,047 M/T DRAFT | : 10.11 MTRS | |
| TPC/TPI | : 43.3MT | | |

 7. VSLS DWT/CORRESPONDING TPC ON DFT 9.0M/9.7M/10M FW

| FT IN | SALT | FRESH |
|---|---|---|
| 34 | 31000 | 30000 |
| 33 | 29650 | 28750 |
| 32 | 28400 | 27500 |
| 31 | 27050 | 26200 |
| 30 | 25800 | 24450 |
| 29 | 24550 | 23700 |
| 28 | 23250 | 22500 |
| 27 | 22000 | 21250 |
| 26 | 20750 | 20050 |

 8. CONSTANTS INCL/CXCL FW

| | | | |
|---|---|---|---|
| CONSTANTS : 500 M/T | | FRESH WATER | : 280 M/T |

 9. HOLDS/HATCHES NO, HATCH COVER TYPE
5HO/5HA MACGREGGOR FOLDING TYPE
 10.LOA/BM/GRAIN/BALE (CBM TTL/HOLDWISE)
LOA: 184.905M/BM:27.503M/BALE: HOLDS CAPACITY CU  FT/MT
GRAIN                BALE

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

| | | |
|---|---|---|
| NO 1. | 201,389 / 5702 | 198,635    /   5624 |
| NO 2. | 274,630 / 7833 | 267,236 / 7567 |
| NO 3. | 273,571 / 7749 | 265,470 / 7517 |
| NO 4. | 274,024 / 7759 | 265,470 / 7517 |
| NO 5. | 275,588 / 7804 | 272,078 / 7704 |
| TOTAL CU FT / MT | 1,301,303 / 36,847 | 1,268,890    /   35,930 |

11. HEIGHT OF STANCHIONS, INTERVAL OF STANCHIONS
N/A
12. DECK BALE CAPACITY, PERMISSIBLE HEIGHT OF DECK CARGO
   PERMISSIBLE WEIGHT OF DECK CARGO
CONTAINERS TOTAL 1100 TEU

TEU INTAKE BASIS 20 MT HOMOGENEOUS    629 IN HOLDS + 471 ON HATCHES
"    "    "    13 MT    "    FULL CAPACITY
"    "    "    10 MT    "    FULL CAPACITY
MAX  370  FEU + 360  TEU

| | | | |
|---|---|---|---|
| HOLDS | 1 / 2 / 3 / 4/  5 = | 91/ 135 /135/135 / 133 | = 629 |
| HATCH | 1 / 2 / 3 / 4 / 5 = | 75/ 99 / 99 / 99 /  99 | = 471 |

<u>STRENGTHS</u>    TANK TOP HOLDS 1/3/5 19. 66 MT / M2 – HOLDS 2/4 11.69MT/M2
   MAIN DECK: 5.20MT/M2   HATCH COVERS 3. 79 MT/M2

13. TANK TOP/DECK/HATCH COVER STRENGTH
   MAIN DECK/HATCH COVERS DIMENSIONS

| HOLDS' SIZES IN MTRS | LENGTH | BREADTH | HEIGHT |
|---|---|---|---|
| 1. | 25.4 | 7.4FWD/18AFT | 13.92 |
| 2. | 25.0 | 22.6 | |
| 3. | 24.8 | 22.6 | |
| 4. | 24.8 | 22.6 | |
| 5. | 25.6 | 22.6FWD/17.6AFT (Shelved) | |

| HATCHES' SIZES IN MTRS | LENGTH | BREADTH |
|---|---|---|
| 1. | 19.6 | 18.2 (Narrowing to 12.90m FWD) |
| 2. | 19.20 | 22.80 |
| 3. | 19.20 | 22.80 |
| 4. | 19.20 | 22.80 |

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

5.                              19.20        22.80

| TANKTOP CLEAR DIMENSIONS (IN MTRS) | LENGTH | | BREADTH |
|---|---|---|---|
| NO. 1 |  | 25.4 | 18–12.4-7.4(shelve) |
| NO. 2 | 24,8 | 22.6 | |
| NO. 3 | 24,8 | 22.6 | |
| NO. 4 | 24,8 | 22.6 | |
| NO. 5 |  | 25.6 | 22.6-17.6(shelve) |

(NO HOPPERS / FRAMES AND CLEAR OF CORRUGATIONS OF BULKHEADS.)

14.HATCH/HOLD/FLAT TANK TOP DIMENSIONS
SEE ABOVE
15.BALLAST TANK CAPACITY, BALLASTING PUMP CAPACITY AND
   DEBALLISTING PUMP SPEED (MT/HR)
BALLAST     : 10600 MT + 7900MT
            NO 3 HOLD FLOODED
16.HEIGHT WATERLINE TO TOP OF HATCH COVER UNDER OPEN CONDITION
   IN LIGHT/HEAVY BAL LAST (SPECIFY WHICH HOLDS TB FLOODED)
15M
17.CRANE
A. NUMBER/CAPACITY OF CRANES:
5X25MT
B. NUMBER/VOLUME OF GRABS:
N/A
C. LOCATION OF CRANES:
GEAR        : CRANES 5X25 TONS
CARGO GEAR TYPE: ELECTROHYDRAULIC OPENSTEIN KOPEL
MAX OUTREACH : ABT 25MTRS

CRANES CAN OPERATE 360 DEGREES AND SERVE ALL HATCHES
        NO 1 CRANE LOCATED BETWEEN        NO 1 / 2  HATCH
        NO 2 "        "             "        NO 2 / 3  HATCH
        NO 3 "        "             "        NO 2 / 3  HATCH
        NO 4 "        "             "        NO 4 / 5  HATCH
        NO 5 "        "             "        NO 4 / 5  HATCH

D. MAX OUTREACH O FHOOK FROM SHIPS SIDE: SEE ABOVE
E. WORKING RADIUS: 360 DEGREES
F. CRANE HOOK SPEEDS IN M/SEC, HOSTING WITH MAX/MIN WEIGHTS:

G. SLEWING/LUFFING/HOSTING TIME IN SECONDS: HOISTING TIME:23-55M/MIN
LUFFING TIME: 39SECS FM MAX TO MIN
CYCLES PER HOUR: 1,1 RPM

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

18.LOCATION OF PILOT BOARDING PASSAGE, IF ANY.N/A
19.SERVICE SPEED/BUNKER CONSUMPTION IN LADEN/BALLAST CONDITION
SPEED            : 13.0 KNOTS
SEA CONS   : HFO 26MT+2.5MT MDO
20.BUNKER CONSUMPTION AT PORT IN WORKING/IDLING CONDITION
PORT CONS :IDLE 2.5MT MDO
              :WORKING 5MT MDO+1 MT        FO FOR BOILER
                 for reefers extra 1,5mt do/day

21.GRADE OF BUNKER IFO/MDO THAT VSL BURNS, BUNKER TANK IFO/MDO CAPA,
   BUNKER IFO/MDO RECEIVING SPEED (MT/HR)
FUEL        : 380 CST ISO 8217        DIESEL      : DMB
              RMG 35
22.MANE OF PNI CLUB/VALIDITY DATE COVER, NAME OF H+M INSURERS/H+M INS
   VALUE/VALIDITY DATE COVER
:UK CLUB FEB2007-2008
23.ITF FITTED AND ITF AGREEMENT NO.: PNO
24.LAST SPECIAL SURVEY/DRYDOCKING (WHEN/SHERE),
   NEXT SS/DD PLAN(WHEN/WHERE)S/S: 31.12.2004 / PIRAEUS
D/D 31.1.2006 / DURBAN
25.LAST PORT STATE CONTROL INSPECTION (WHEN/WHERE)
15.2.2007 / PARANAGUA

26.LAST 3 CGOS : round logs fm Africa to China, bagged cement and project cargoes
from china to africa , concentrate peru korea and china

27.MASTER/KEY OFFICIERS EXPERIENCE OF LOG LOADING/CARRYING: N/A
28.LAST RECORDS OF WAFR LOGS AND OTHER LOGS INCL DATE/LP/SPECIES/QTTY:
N/A
   IN HOLD/ON DECK RESPECTIVELY WITH HEIGHT OF DECK CGO: N/A
29.FULL ITIN INCL ETA/B/D WITH CGO TB DISCH AT EACH PORT UPTO DELY
   PORT AGENTS AT LAST PORT PRIOR TO DELY WITH TEL/TLX/FAX: EN ROUTE TO
DALIAN TO DISCHARGE CARGO. ETA 25/5. AGENTS DALIAN: PENAVICO DALIAN (CHINA
OCEAN SHIPPING AGENCY. TEL: 008641182641688
THEN ON TO LAST PORT OF DISCHARGE, JINZHOU ETA 27/5. AGENTS JINZHOU PASSED
ON BY PREVIOUS EMAIL.
30.FUEL OIL TANK SKETCH BELOW TANK TOP OF EACH HOLDS: RVTG

Contact details (disponent Owners) in case of emergency
Mr. Xue Guang Yu
Mandarin Marine Co., Ltd
Tel: 86 10 6517 0101-106
Fax: 86 10 6517 9070
Email: Mail@mmcl.com.cn

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Uk Tlx: 051 94076344 MMCL G
Mob: 86 139 1121 5989

**Clause 32 - Fittings**
Charterers to have option to weld padeyes and/or other lashing/securing devices/points at
their expenses and subject to the master's approval which is not to be unreasonably
withheld. Charterers to remove all such padeyes and/or other lashing/securing
devices/points prior to redelivery, Charterers have the option not to remove padeyes etc.,
in consideration of which Charterers are to pay Usd 15.00 per padeye etc. Any
lashing/separation materials except for containers loading if required to be provided and
paid by Charterers. If welding on places with internal coated tanks the charterers to
replace/patch up possible damage to coating in tanks to the master's/owners' satisfaction.

Owners guarantee Vessel is equipped with full set of lashing/securing materials and
Vessel is fully fitted for her described container capacity in accordance with tank
top/deck/hatch cover strengths.

**Clause 33 - Grabs**
Charterers to have the liberty to use suitable grabs in accordance with vessel's lifting
gear for discharge in all holds. Vessel's holds/hatches to be clear and free from all
obstructions and suitable in every respect for grab discharge. All/any pipes/wires/cables
to be covered and protected and Owners to be responsible for any/all damage if incurred
due to vessel's non compliance with this clause.

**Clause 34 – Hatch Covers**
Owners warrant vessel's hatch covers are watertight all throughout the charter, and if
there is any defective, same to be rectified immediately at Owners time and expense to
the satisfaction of Charterers.

**Clause 35 - Safe Ballast**
Owners guarantee vessel always to be safe in ballast and it is agreed that if any solid
ballast is required, all expense for same including time used in loading and discharging to
be for Owner's account.

**Clause 36 - Ballasting / Deballasting**
Vessel to ballast/deballast clean water ballast tanks if required by Charterers or their
agents at any time during loading and/or discharging, free of expenses to Charterers but
in Charterers time. All ballasting/deballasting shall be at the discretion of Master having
due regard to stability and seaworthiness of the vessel. Owners warrant that the vessel is
not black listed by Richards Bay Coal Termiral (RBCT) and furthermore that the vessel in
every way complies with RBCT rules and regulations.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

For the purpose of conducting a draft survey, the vessel must have on board certified calibrated scales for vessel's tanks and double bottoms and capacity plans, displacement scale and dead-weight scale and any other documents and information necessary for conducting a draft survey. The vessel's marks fore/aft/midship to be clearly legible.

## Clause 37 - Grain
Owners warrant that the vessel is suitable for carrying a full cargo of grain in all holds without requiring any grain fittings and/or bagging or securing etc.

Vessel has on board valid grain loading booklet in accordance with SOLAS 1974 regulations and IMO resolutions a-264 (VIII) as adapted in 1974. Furthermore, vessel to have on board approved table of heeling moments for "filled holds-untrimmed ends" in accordance with IMCO bc xix.inf 4. It is understood that grain loading to be according to IMO regulations and per vessel's grain loading booklet.

## Clause 38 - Vessel's Deficiency
That in the event of the loss of time from deficiency of men or stores and/or default and/or strikes of officers and crew whether due to labour dispute or disputes with unions or associations concerned or connected with Owner's affairs or otherwise, fire, breakdown or damages to hull, machinery or equipment, grounding, detention by average accidents to ship or cargo, dry docking for the purpose of examination or painting bottom or other necessary measures to maintain the efficiency of the vessel, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost, and if upon the voyage the speed be reduced by defect in/or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all extra expenses shall be deducted from the hire.

The Charterers may in their option, at any time, add to the time Charter Party period, partly or wholly any off-hire period(s). The rate of hire for any such added period(s) shall be paid at the same rate as that applicable during the off-hire period(s).

During any off-hire period estimated to exceed 8 days the Owners to give the Charterers not less than three (3) days definite notice of resumption of the service.

If the vessel has been off-hire for a period of twenty-five (25) consecutive days during this Charter Party, the Charterers shall have the option to cancel this Charter Party and redeliver the vessel, provided free of cargo.

Should the vessel deviate or put back during a voyage, contrary to the orders or directions of the Charterers for any reason, except saving life, the hire to be suspended from the time of her putting back or deviating until she is again in the same or

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

equidistant position from the destination and the voyage resumed therefrom.

After suspension of hire from any cause, the vessel shall be placed at Charterers disposal at the same port or position where hire was suspended. Charterers may, however, in their option accept the vessel on hire again in such position and at such time as the vessel may again in all respects be ready to comply with the orders and directions of the Charterers, provided always to be either same port/position or equidistant.

## Clause 39 - Vessel's Detention
Should the vessel be seized and/or detained and/or geographically constrained in relation to her Owner's substance by any government or body (whether legally constituted or not) or by any persons acting out of a malicious, belligerent or political motive or as a result of any action by any such government body or persons, the vessel shall be off-hire for all time thereby lost and fuel oil/diesel oil consumed and all port charges whilst off-hire for Owner's account, unless vessel be seized and/or detained and/or geographically constrained due to Charterers and/or sub Charterers and/or their servants legal or illegal actions, orders regarding trade and employment in which case vessel to be on hire and all expenses arising there from to be for Charterers account.

## Clause 40 – Boycotts
In the event of loss of time, boycott of the vessel or any labour trouble by shore labour, seamen's unions, tugboats, pilots, linesmen, stevedores and local authorities etc., whether official or unofficial, arising by reason of vessel's flag, nationally or registry, her ownership, terms and conditions on which crew members are employed on this or any other vessel under the same ownership and/or operations and/or control, payment of hire shall cease for the time thereby lost.

## Clause 41 - Customs Fines
Owners to be responsible for customs fines and/or port authorities fines and to put up security in case of necessity if Owner's vessel is proven responsible and if so demanded by local authorities for Owner's matter unless fines imposed to the vessel due to cargoes and/or sub Charterers and/or their agents omissions or faults or instructions in which case any expenses including security if necessary to be provided and paid by Charterers and vessel to remain full on hire. Any dispute as to ultimate liability arising insofar to be decided according the terms and conditions of this Charter Party.

Owners to be responsible for any fines whatsoever in the event of smuggling acts by their own officers and/or crew, Owners' passengers and Owners to remain responsible for detention of the vessel due to smuggling and any other expenses arising from these acts. Charterers to be similarly responsible in respect of Charterers representatives and /or agents.

## Clause 42 - Arrest/Seizure
Should the vessel be arrested and/or seized during the currency of this Charter Party at

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

the suit of any person having or purporting to have a claim against, or any interest in the vessel or by any other default of the Owners, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest only if such arrest affects loading/discharging operations and the Owners shall reimburse to the Charterers any direct, proven and duly supported by vouchers expenditure which they may incur under this Charter party in respect of any period during which by virtue of the operation of this clause no hire is payable unless such arrest is caused by actions of Charterers and/or their sub Charterers and/or their agents and/or servants.

## Clause 43 - Discrimination
In the event of loss of time due to boycott of the vessel by shore labour or arising from government restrictions by reasons of vessel's flag or the terms and conditions by which members of the crew are employed or by reason of Owner's operation or control, vessel to be off-hire and all direct, proven and duly supported by vouchers expenses to be for Owner's account.

## Clause 44 - Quarantine
Normal quarantine and expenses to enter the port to be for Charterers account but any time of detention and expenses for quarantine due to pestilence, illness, etc. of Master, officers and crew, to be for Owner's account.

## Clause 45 - Gear Breakdown
Owners warrant vessels gears can serve all holds at same time and all vessels gears are in good working condition throughout the currency of the Charter Party. The vessel shall have on board Gear and Tackle certificate issued within the last twelve months by an Internationally recognized classification society before the vessel shall be entitled to present notice of delivery in accordance with the appropriate clause expressed elsewhere in this Charter Party. In the event of a break down of crane or cranes by reason of disablement or insufficient power to operate cranes, the hire is to be reduced pro-rata for time of such inefficiency in relation to the number of cranes available. Owners to pay for shore engines/cranes in lieu thereof if required by Charterers, and to pay any loss of time occasioned thereby in which case vessel to be remain on hire. any proven expenses incurred by Charterers and/or Shippers and/or receivers including stevedore standby resulting fm such breakdown or insufficiency of vessel's gears to be for Owners account.

## Clause 46 - Garbage
Garbage disposal for Owner's account if compulsory same to be for the Charterers.

## Clause 47 – Certificates/ Vaccinations

Owners are obliged to deliver and keep the vessel, her crew and anything pertaining hereto supplied with all the required up-to-date and valid international trading certificates, enabling the vessel and her crew to load, carry and discharge all cargoes permitted under this Charter Party, and to call at all ports for cargo operations and/or to receive bunkers within the trading limits of this Charter Party.

It is the responsibility of the Master and the Owners  to arrange for any special

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

vaccination required at ports of call and to keep on board corresponding valid certificates.

If Owners fail to comply herewith, any time lost and all direct, proven and duly supported by vouchers extra expenses to be for Owners' account and Charterers may deduct same from the hire.

## Clause 48 - International Tonnage Certificate
Upon delivery, the vessel shall have on board an International Tonnage Certificate valid for the duration of this Charter Party and such Tonnage Certificate shall be acceptable by the local Authorities at the countries of call within the Trading limits of this Charter party. Should such certificate not be acceptable to the local authorities, any time lost and all extra direct, proven and duly supported by vouchers expenses for issuing an acceptable certificate are to be for the Owner's account.

## Clause 49 - Bimco ISM Clause
The Bimco ISM Clause to apply throughout the currency of this Charter Party, from the date of coming into force of the International Safety Management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall provide that both the vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.
Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM code shall be for the Owners' account.

## Clause 50 -I.T.F./Flag Restrictions, etc.
Owners warrant that the officers and crew of the vessel are covered for the duration of this Charter Party by a Chinese Manning Agreement which is equivalent to I.T.F. Loss of time and extra expenses incurred as a result of non-compliance shall be for Owner's account and may be deducted from hire.

The Owners are responsible for any loss of time or delay or restriction to the full working of the vessel resulting from any action that may be taken against the ship and/or the Owners by third parties for any reason that the Owners are responsible. Any time lost as a consequence of any such action by third parties shall be considered as off-hire and shall be deducted from the hire. Any extra expenses resulting directly from such action shall be the responsibility of and paid for by the Owners, or, in Owner's option, shall be paid by the Charterers and deducted from the hire. Owners warrant that the vessel is not blacklisted by any country within the trading limits of this Charter Party.

## Clause 51 – Suez / Panama
Throughout the period of this Charter vessel to be properly equipped to transit the Suez and Panama Canals to have on board current, valid Suez Canal and Panama Canal Certificates and vessel and her fitting to comply with all applicable requirements/regulations of the Canal Authorities. Any delays and extra expenses

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Incurred in transit of Canal through vessel's lack of proper certificate and/or fittings and equipment to be for Owner's account.

## Clause 52
Deleted

## Clause 53 - Oil Pollution
Financial responsibility in respect of pollution (all ships other than self-propelled tank vessels and non self-propelled tank vessels carrying more than 2,000 tons of Persistent oil in bulk as cargo).

1. Owners warrant that throughout the currency of this Charter they will provide the vessel with the    following certificates:

A. Certificates issued pursuant to Section 311 (p) of the US Federal Water    Pollution Control Act, as amended (Title 33 US Code, Section 1321 up to (insert the date upon which such certificates is/are due to expire).
B. Certificates issued pursuant to Section 1016 (a) of the Oil Pollution Act 1990, and Section 108 (a) of the Comprehensive environmental Response. Compensation and Liability Act 1980, as amended, in accordance with Part 138 of Coast Guard Regulations 33 CFR, from (indicate the earliest date upon which the owners may be required to deliver the vessel into the charter or, if later, the date inserted In sub-paragraph (a) above so long as these can be obtained by the owners from or by (identify tile applicable scheme or schemes).

2. Notwithstanding anything whether printed or typed herein to the contrary,

A. Save as required for compliance with paragraph (.) hereof, owners shall not be required to establish or maintain financial Security or responsibility in respect of oil or other pollution damage to enable  the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country, state or territory in performance of this Charter.

B. Charterers shall indemnify owners and hold them harmless in respect of any loss, damage, liability or expense (including but not limited to the costs of any delay incurred by the vessel as a result of any failure by the Charterers promptly to give alternative voyage orders whatsoever and howsoever arising which owners may sustain by reason of any requirement to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.

C. Owners shall not be liable for any loss, damage, liability or expense whatsoever and howsoever arising which Charterers and/or the holders of any bill of lading issued pursuant to this Charter may sustain by reason of any requirement to establish or maintain financial security, or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

**Clause 54 - P & I Club**
Owners warrant that the vessel is entered and shall remain in a Protection and Indemnity
Association for the duration of this Charter Party. Entry shall include, but not be limited
to, full cover for cargo claims of any nature and Owner's liability for personal accidents or
injuries incurred by third parties on board or about the vessel. Owners option to change
P & I club, but to be a member of the International Group of P & I clubs.

Owners' P&I Club is the UK Club.

P&I Club of Nobel Bulk Carriers Limited (Disponent Owners):
Steamship Mutual Management (Hong Kong) Limited
Representative of
Steamship Mutual Management (Bermuda) Limited
Managers for & on behalf of
The Steamship Mutual Underwriting Association (Bermuda) Limited

Charterers' P and Club : West of England

**Clause 55 – Bunkers**

Bunkers on delivery as on board. Estimated bunkers on delivery quantity about
700- 750 metric tons of IFO and about 100 metric tons of MDO.
Bunker on redelivery quantity to be about 410 metric tons of IFO and about 62.5 metric
tons of MDO. Bunker prices US$ 410 per metric ton  for IFO and for MDO US$ 710 per
metric ton at both ends.
Charterers have the option to bunker vessel prior to delivery provided that does not
interfere with Owners' normal operation.

**Clause 56 - Supercargoes / Port Captains**
The Charterers and/or their supercargo(es) with master's approval, which not to be
unreasonably withheld shall have free and unlimited access to the whole vessel including
bridge. holds and engine room and also to all vessel's tanks, including but not limited to,
bunker-, lubricating oil-, sludge-, ballast-, and freshwater tanks.

Whenever required, the Master must bring the vessel into even trim to ensure correct
bunker soundings. The Charterers and/or their supercargo(es) and/or surveyors to have
free and unlimited access to the vessel's deck and engine-log books in English, tank
plans, calibration scales, and/or other plans as requested and are allowed to make copies
of the original log books on board or ashore.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Charterers to sign and send to Owner's office Letter of Indemnity as per Owner's text in
case they decide to place Supercargo and/or their representative on board.

## Clause 57 – Performance

Owners warrant that the vessel will throughout the currency of this charter maintain the
service speed and bunker consumptions as described in good weather conditions which
shall be defined as Beaufort force 4 or below. Owners/Master shall adhere to the
instruction of the independent weather Service company and treat their cal on
speed/consumption as final and binding in case of any consistent discrepancy between
vessel's logs and ocean routes or similar.

## Clause 58 - Bottom Cleaning Clause

If the vessel is in a port for more than 30 days or idle at a safe anchorage for more than
30 days, Owners to appoint divers to check hull bottom and report with signature to
Charterers. If Charterers need hull bottom cleaning at their discretion, Charterers are to
bear the cost of hull bottom cleaning. Owners shall endeavor to carry out bottom
cleaning at next available port where such facilities are available. Vessel is to remain on-
hire during the cleaning operation. However, when practical, the bottom cleaning should
take place at the port where the ship has been laying for more than 30 days but if it is
not practical to do so and cleaning has to take place at another location, Charterers have
no right to lodge a speed or bunker claim against the Owners during the period the
vessel is in a condition and en route to the port identified where the hull cleaning is to be
undertaken.

## Clause 59 - Master's / Crew's Assistance

With reference to Clause 8 of this Charter Party, hire to include "customary assistance"
which shall mean all types of work which the Master and the crew would normally do
when the ship is trading for the Owner's account provided that all or part of such works
are permitted by port authority and/or local labour regulations such as, but not limited
to:

A. Raising and lowering and rigging derricks/cranes and/or gangways in preparation for
loading and discharging.
B. Opening and closing of hatches in connection with loading and discharging, if local
regulations permitting
C. Closing and opening of hatches in the event of weather which may adversely affect
condition of cargo carried on board during loading and discharging, if local regulations
permitting
D. Customary supervisions of loading and discharging. Master to remain responsible for
the stowage of the vessel insofar as this concerns the trim and/or stability of the vessel,
its seaworthiness and safety
E. Maintaining sufficient stem/electric power for all cranes in good order whilst loading
and discharging including regular maintenance of derricks/cranes
F. Shifting vessel during loading and discharging and shifting berth
G. Docking and undocking      .

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

## H. Bunkering

Weather permitting Officers and Crew to shape up vessel's hatches and derricks/cranes as much as possible prior to arrival at loading and/or discharging ports or places so as to immediately commence loading and/or discharging operations.

The Master shall be responsible for all gear, equipment and/or stores supplied to the vessel by of for Charterers account and the Master shall keep a record of all such gear, equipment and/or supplies so supplied. Master to maintain same in good condition. Such gear, equipment and/or stores to be redelivered to the Charterers prior to redelivery of the vessel to the Owners or if required by the Charterers, at any time during the Charter in like good order and condition as supplied wear and tear excepted.

## Clause 60 – Hold/ Condition/ Surveys/ Inspection

Vessel's holds on delivery Charterers' option on arrival at first load port to be clean/swept/washed down by fresh water and dried and in every respect fit and ready to receive Charterers intended cargo, being free of rust scale and previous cargo residues to the satisfaction of Charterers surveyors. Should vessel not to be ready or approved by relevant surveyors as being fit and suitably clean for Charterers intended cargo, the vessel to be off-hire from time of rejection until the vessel is fully accepted and any expenses incurred because of rejection and/or whilst vessel off hire to be for Owners' account. Furthermore, Owners to immediately make any possible measure to ensure retendering of Notice of Readiness not later than agreed cancelling date.

## Clause 61 - Trading Exclusions

Trading always within Institute Warranty Limits, ice free ports and vessel not to force ice or to follow ice-breakers. Vessel to be employed in lawful trades for the carriage of lawful merchandise only specifically excluding Finland, Yugoslavia, North Korea, Albania, C.I.S. Pacific Ports, Israel and Israel controlled territories, Cuba, Iraq, T.O.C., all war and warlike zones, as defined by the War Risk Clause Conwartime 93 contained in this Charter-Party. Vessel is not allowed to trade to ports/areas which are prohibited from trading by the United Nations and/or International Organizations of the United Nations. If an area to which the Vessel is bound becomes a war zone or a war-like zone after commencement of the voyage, the War Clause (Conwartime 93) to apply.
Charterers not to trade Vessel directly between People's republic of China and Taiwan, South Korea and North Korea.
Taiwan is accepted but international regulations pertaining to trade between countries to be followed.

LIBYA WILL NOT BE AN EXCLUDED TRADING AREA AS LONG AS THERE ARE NO SANCTIONS AGAINST HER AND AS LONG AS SHE IS NOT AN ADDITIONAL PREMIUM AREA FOR WAR RISK INSURANCE. CURRENTLY NEITHER OF THESE CONDITIONS APPLY AND OWS AVE NO OBJECTION FOR THE VESSEL TO PROCEED TO LIBYA.

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

It is understood that Charterers, cannot and will not trade in excluded areas however. Charterers have the option to trade within and through war zones as outlined by Insurance Underwriters but always subject to approval by Owners and Insurance Underwriters. If Charterers elect to proceed into or through a war zone, Charterers will furnish Owners with voyage details prior to loading and prior to entering such zone for Owners subsequent submission to Insurance Underwriters. Said approval not to be for owners unreasonably withheld. Basic war risk insurance cover for the vessel to be for owners account but any additional premiums for trading to restricted areas incl. but not limited to physical damages, blocking and trapping, loss of earnings as well as crew war bonus as covered by owners to be for Charterers account.

Any amendments as provided by Insurance Underwriters to excluded areas and war zones due to change in Political climate or other circumstances is to included both deletions and additions and is understood to be incorporated into the terms and conditions of this Charter Party.

Owners to have option to take out war risk insurance cover as they and/or their underwriters determine required. Charterers to refund any additional premium immediately upon presentation of faxed invoice.

Angola, Nigeria, Cameroon, Gabon and R. Congo (Pointe Noire) are always allowed.

## Clause 62 – War Risk Insurance
Basic annual war risk insurance of vessel and/or crew be for Owner's account. Any extra or additional war risk Insurance premium charged by Owner's Underwriters by reason of vessel's trading under this Charter party to be for Charterers account and to be refunded to Owners by Charterers upon receipt of Owner's Underwriters invoices. All additional war risk insurance to be based on minimum rate of Lloyd's London Underwriters Committee. Any blocking/trapping/detention insurance to be for Charterers account. Any crew war bonus payable by reason of vessel's trading under this Charter Party to be refunded to Owners by Charterers.

## Clause 63 – BIMCO Double Banking Clause

The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to go lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe cock. wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

The Charterers shall pay for and provide such assistance, and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Without prejudice to the generality of the Charterers' right under (a) and (b), it is
expressly agreed that the Master shall have the right to reuse to allow the vessel to
perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

The Owners shall be entitled to insure any deductible under the vessel's hull policy and
the Charterers shall reimburse the Owners any additional premium(s) required by the
vessel's Underwriters and/or the cost of insuring any deductible under the vessel's hull
policy.

The Charterers shall further indemnify the Owners for any costs, damage and liabilities
resulting from such operation. The vessel shall remain on hire for any time lost including
periods for repairs as a result of such operation.

**Clause 64 - Cargo Exclusions**

Excluded cargoes
-----------------------

None of the cargoes, goods or substances listed below are to be loaded during the
currency of this Charter:
All corrosive, dangerous, explosive, hazardous, inflammable, injurious and toxic
substances or goods, all goods or substances listed in the IMO/IMD code – 1990
Consolidated Edition and any subsequent new edition thereof or amendments thereof or
amendments thereto, acids, ammonium nitrate, ammonium phosphate, ammunition,
animals, antiques, art objects and curious, arms, asbestos, asphalt, bank notes or other
forms of currency, cocoa and coffee either bulk or bagged, bitumen, black powder,
blasting caps, bonds or other negotiable instruments, bones or bone meal, borax, bullion,
calcium carbide, calcium hypochlorite, calcium oxychloride, charcoal, clay, copra,
corrosives, cotton or cotton waste, creosoted and creosoted goods but cca treated poles
allowed, direct reduced iron in any form, drugs, esparto grass, essential oils, explosives,
firearms, fire briquettes, fishmeal, ferro-silicon except ferro-silicon 75pct harmless and
non-dangerous which to be loaded and carried as per IMO/local regulations and P and I
recommendations, flurospar, hides, skins and furs, jewellery and other objects of a rare
or precious nature, jute, lime, livestocks, logs, manioc, mobile homes or caravans,
naphta, narcotics, nuclear substances or fuel, oilcake, palm kernels, petroleum
derivatives and all petroleum products, pitch, poultry, precious or rare metals,
radioactive substances, products of waste, rags, refrigerated cargo, salt, petroleum
products, scrap metal in any form including motor blocks/turnings/SWARF, solvents,
specie, sponge iron, sulphate in bulk but sodium sulphate allowed, sunflowerseed
expellers and cakes, tar and all its products, tea, tobacco, waste and old paper. Bulk
concentrates are allowed. Calcined petcoke allowed.
All expenses or costs incurred by reason of the carriage of dangerous cargo to be for
Charterers' account. Any additional premiums paid by Owners to Underwriters and any
additional bonuses to crew to be for Charterers' account.

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Notwithstanding the above, Charterers are allowed upto a maximum of 750 metric tons of lawful dangerous (excluding Classes 1 and 7) for each laden voyage under this Charter, always provided that such cargo is packed, labelled, loaded, stowed, dunnaged, lashed, secured, carried and discharged in accordance with IMO regulations, British Department of Trade regulations, U.S. Coast Guard Regulations applicable in all countries at which the Vessel will call and/or whose territorial waters it will transit whilst such cargo is on board.
All delays causes and expenses or costs incurred, by reason of the carriage of dangerous cargo are to be for Charterers' account. Charterers to ensure that such cargo is properly declared, manifested and documented, failing which they are to be fully liable to Owners for all consequences, including any fines imposed.
All special fittings, equipment and/or instruments required for the safe carriage of dangerous cargo, including equipment and/or instruments required for the protection of the crew, are to be provided by Charterers at their expense. Charterers are to give Owners notice when such cargo is to be loaded specifying the exact description, quantity, packing, IMO-IMDG category and destination of the cargo involved.
Any additional premiums paid by the Owners to their underwriters to maintain full insurance cover during the carriage of dangerous cargo hereunder, and any additional crew wages or bonuses paid by the Owners to the Master, officers or crew in accordance with the terms of their employment contracts by reason of such cargo being carried, are to be for Charterers account and are to be reimbursed by them to the Owners. The carriage of arms and ammunition and nuclear or radioactive substances of any description is always excluded.

Steels and/or steels products to be loaded within Vessel's tanktop strength and their weight to be equally distributed on the tanktop by suitable flooring. Cargo to be loaded/stowed/lashed/secured dunnaged according to Master's satisfaction. Charterers to provide necessary dunnage and lashing materials. Steel coils to be loaded in accordance with the American Standard procedures and in compliance with local load/discharge port authorities' regulations. To secure the cargo Charterers have the option at their risk, time and expense to weld padeyes on holds bulkheads and holds' sides and on places that do not damage paint coatings. These padeyes to be removed at Charterers' time and expense prior Vessel's redelivery and to grind the areas of the welding but Charterers have the right not to remove these padeyes in which case Charterers will pay Owners USD 15 per padeye.

On cargoes like steels, Owners to arrange their P and I Club to appoint Surveyor/s to carry out pre-shipment cargo condition survey and to advise Master how to clause the Mates' receipts and/or Bills of Lading and to follow up with discharging condition survey. The costs of these Surveys to be paid by the Owners.

Charterers are permitted to load a maximum of one (1) cargo of salt. Prior loading salt Charterers undertake to limewash the holds. Cost of limewashing including materials and time to be for Charterers account and Vessel to remain on hire.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Charterers are permitted to load a maximum of one (1) cargo each of non-oily petcoke
and scrap (HMS1 or HMAS2) over the duration of the Charter.

SALT/SULPHUR PROTECTIVE CLAUSE
a) Charterers undertake to use holds as less as possible, provided Vessel's stability, trim
and stress permitting
b) Before loading, all holds assigned for sulphur/salt to be lime/washed by Charterers at
their time/expense/risk to satisfaction of Master and independent surveyors appointed by
Charterers at their expense.
c) Cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO and/or
any other latest regulations/rules applicable to cargo
d) After discharging, Charterers to supply sufficient fresh water at their expense for
washing down of all holds.
e) Any extra expenses resulting there from/incurred thereby and any detention through
any of above causes, to be for Charterers' account.

PETCOKE PROTECTIVE CLAUSE
Charterers have the liberty to carry calcined petcoke and a maximum of one (1) cargo of
non-oily petcoke whether it be full or part cargo)during the entire currency of this
Charterers Party on following conditions:
a) Petcoke mentioned herein is only limited to calcined petcoke and non-oily petcoke.
b) If Charterers exercise such option, Charterers undertake to use holds as little as
possible, provided vessel's stability, trim and stress permitting.
c) Such cargo to be loaded/stowed/trimmed/discharged strictly according to latest IMO
and/or any other latest regulations/rules applicable to such cargo.
d) Should any additional/special washdown of holds before loading be Reasonably
recommended/proposed/required by Master, Chartereres undertake to arrange the same
at their expense/time.
e) After discharge, Charterers to arrange at their expense/time any additional/special
washdown of holds carrying such cargo by chemicals, as Master reasonably considers
necessary.
f) Any extra expenses resulting therefrom/incurred thereby and any detention through
any of above causes, to be for Charterers' account.

CEMENT PROTECTIVE CLAUSE
(a) Charterers undertake to use holds as less as possible, provided Vessel's stability, trim
and stress permitting.
(b) Should any additional/special washdown of holds before loading be
required/recommended by independent surveyors appointed by Charterers at their
expense, such washdown to be arranged by Charterers at their expense.
(c) After loading, Charterers undertake to arrange at their expense any special/extra
trimming and/or leveling of cargo to Master's satisfaction and also Charterers to give
reasonable time to allow for the cargo to settle and any air to escape before Vessel's
departure from loading berth/port.
(d) Any extra expenses resulting therefrom/incurred therby and any detention through
any of above causes to be for Charterers' account.

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

(e) All cutting and restoring of the holes to be fully supervised/ attended/approved by classification surveyor with written documents.

(f) Holds not to be cut within the same frame space with the existing grain feeding holes and to be cut at the suitable place of hatchcover in accordance with Vessel's builder specification.

(g) Welt protection to bilge well of all holds is strictly necessary to keep smooth suction while discharging hold washing water by using gum tapes(plaster) or so.

(h) When restoring cement holes, chill plates or similar material if deemed necessary by Master/surveyor, to be fitted for complete welding in order to reinstate the hatchcovers back to their original condition.

(i) After completion of restoring of holes, hose test to be carried out in presence of classification surveyor and the test result should be to his satisfaction.  Otherwise the Charterers have the obligation to rectify the situation until and when satisfied by surveyors.

(j) Charterers indemnify Owners of all possible cargo solidification, due to hold sweating which is impossible to avoid by proper operation of existing natural ventilation system.

(k) All time for preparing, cutting and restoring up to classification surveyor's satisfaction as well as all expenses including classification surveyor's fees and expenses shall be for Charterers' account.


SCRAP PROTECTIVE CLAUSE

BIMCO Scrap Metal Clause

(a) Cargo for the purpose of this Clause shall mean scrap metal, excluding metal borings, shavings and turnings. The Charterers shall instruct the Terminal Operators or their servants to load the cargo, other than by magnets, in accordance with, where appropriate, Annex 9 of the IMO Code of Safe Practice for Cargo Stowage and Securing. Compliance with the provisions of Annex 9 of the above mentioned IMO Code shall not affect the counting of laytime.

(b) In the event that the Charterers, the Terminal Operators' or their servants do not comply with the provisions of (a) the costs for any damage caused to the Vessel as a result thereof and any time spent repairing such damage affecting laytime shall be for the Charterers' account.

(c) All claims for damage referred to under (b) above shall be reported by the Master to the Charterers or their agents in writing within 24 hours of the occurrence or, as soon as the damage could reasonably be expected to have been discovered by the exercise of due diligence without prejudice to the Charterers' liability. The Master shall use his best endeavours to obtain written acknowledgment by the responsible party causing the damage unless they have made good the damage in the meantime.

SOFT LOADING CLAUSE

First load of scrap to each hold to be loaded as close as possible to the bottom of the hold so as to provide a proper flooring as cushion to the master's satisfaction which not to be unreasonably withheld before loading the balance cargo. Loading chute/grab/magnet not to be directed towards pipes and ladders. Loading operations should always be to master's satisfaction.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

If petcoke, salt or scrap is the last cargo carried prior to redelivery then Charterers to pay Owners USD 7,500 in lieu of hold cleaning.

Furthermore, cargoes that possess chemical hazards as per appendix b of code of safe practice for solid bulk cargoes. However certain types of b cargoes can be loaded but are subject on class surveyor's attendance/approval. All expenses/time required in order to comply with class surveyor requirements to be for Charterers account.

Bagged cement/steel products, plus equipments including vehicles/containers in hold/on deck are always allowed. Deck cargo loading at Charterers' risk and expense.

**Concentrate Clause**
Charterers are allowed to carry concentrates. Charterers to load, stow, trim and discharge concentrates in accordance with IMO and Local Regulations and within the transportable moisture content of the cargo as ascertained in accordance with IMO Code of Safe Practice for Bulk Cargoes. Charterers are fully responsible to all time /cost / expense pertaining to carrying of concentrates including but not limited to all certifications / surveys required for carriage of this cargo.

**Ammonium Nitrate Ferts Clause**
Ammonium Nitrate Ferts Grade according to IMO BC Appendix B+C in hold No. 1-4 is allowed.

**Deck Cargo Clause**
Charterers have the option to carry cargo on deck at their own risk and expenses but always within vessel's stability, within vessel's deck and hatch cover strengths, in accordance with IMO/SOLAS rules, and to Master's prior approval and satisfaction.

Charterers to provide and pay for all lashing and stowing/securing material and/or fitting required for deck cargoes except those lashing materials for logs loading which always to be for Owners account.

Bills of Lading for deck cargo to be claused: Any deck cargo is shipped at Charterers/shippers' risk and expenses and Charterers/Shippers hold Owners unreliable for any loss/damage.

**Clause 65 – BIMCO Stevedore Damage Clause**
Any damage caused by stevedores during the currency of this Charter Party shall be reported by the Master to the Charterers or their agents, in writing, within 24 hours of the occurrence otherwise Charterers not to be responsible. Except latent damage, not

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

reasonably ascertainable by due diligence, which to be reported as soon as discovered or latest on redelivery of the vessel. The Master shall use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage should have been made good in the meantime.

Stevedore damage affecting seaworthiness or affecting vessel's class or posing a condition to vessel's class or the proper working of the vessel and/or her equipment, shall be repaired without delay to the vessel after each occurrence in the Charterers time and shall be paid for by the Charterers. Other repairs shall be done at the same time but if this is not possible, same shall be repaired whilst vessel is in drydock in the Owner's time, provided this does not interfere with the Owner's repair work, or by vessel's crew at the Owner's convenience. All costs of such repairs shall be for the Charterers account. Any additional time spent in repairing stevedore damage shall be for the Charterers account.

## Clause 66 – Lieu of Cleaning on Redelivery

In lieu of hold cleaning Usd 5,000 lumpsum excluding disposal/removal debris/barks/lashing dunnages materials.

## Clause 67 - Intermediate Hold Cleaning

If required by charterers, intermediate hold cleaning to be performed by vessel's crew provided that sufficient time is available and that the local labour and/or port regulations and weather conditions between previous final discharge port and subséquent loading port permits. Although the master and crew are not responsible for the result of intermediate hold cleaning and/or the acceptance of survey on hold condition, the master / crew shall do their best in cleaning cargo holds and other stained parts in order to make the vessel's cargo holds acceptable to surveyor/inspector for cargo loading. Charterers to pay owners lump sum usd600 per hold for grain cargoes and lump sum usd800 per hold for other normal cargoes except dirty cargoes and lump sum usd1,500 per hold for dirty cargoes including but not limit to cement/clinker/sulphur/petcoke/salt/concentrate for intermediate hold cleaning excluding rmoval of dunnage / lashing / debris and log barks. It is explicitly understood that owns / vsl is not responsible for the disposal of dunnage / lashing material / debris and log barks.

## Clause 68 - Stowage

The Master shall supervise stowage of the cargo as well as instruct one of his officers to supervise all loading, handling and discharge of the cargo, and he is to furnish Charterers with stowage plans as well as other documents customarily used.

If Charterers wish to load hot rolled coils then Owners confirm that coils may be loaded line for line in as many tiers as is necessary always within vessel's permissible tanktops strengths and to Master's satisfaction, with regard to stress, trim and stability requirements. Coils to be loaded and slowed in accordance with American Standard loading procedures and in compliance with load/discharge port requirements.

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Above cargo to be adequately dunnaged and lashed ensure safe stowage to Master's satisfaction which to be supplied by Charterers to the vessel due in time prior commencement of loading.

**Clause 69 - Taxes**

All taxes and/or dues on vessel and/or cargo and on Charter hire and freights arising out of cargoes carried or ports visited under this Charter Party shall be for Charterers account, except taxes levied on vessel's flag and in connection with port of vessel's registry which to be for Owner's account.

**Clause 70 - Agency**
Owners have the benefit of Charterers' agents in dealing with vessel's/crew's minor matters in all ports of call without paying agency fee. Any specific agency charged on crew members are for Owners account. Agency fee charged because of major Owner requirements is for Owner's account.

**Clause 71 - Bills of Lading**
Charterers or their agents are herewith authorised to issue and sign Bills of Lading as presented on Owner's/Master's behalf In accordance with Mate's receipts without prejudice and/or reference to this Charter Party. Master to advise Charterers directly of any notation made on Mate's receipt. Charterers indemnify Owners against all consequences incurred to the vessel/Owners as result of signing Bills of Lading by the Charterers and/or sub Charterers and/or their agents. Owners/Master to authorize Charterers or their agents to sign/issue Bills of Lading if required by Charterers but always in strict accordance with mate's receipt.

It is expressly agreed that Charterers will not issue or cause to be issued Bills of Lading which are subject to the provisions of Hamburg Rules. If the original Bills of Lading cannot be presented at discharge port, Owners/Master agree to discharge/release the entire cargo with out presentation of the original Bills of Lading only against Charterers single Letter of Indemnity in Owners standard P and I form and without bank guarantee or bank endorsement with attached copy of Bill of Lading.

**Clause 72 - L.M.A.A. Arbitration Clause**
All disputes or differences arising out of or under this contract which cannot be amicably resolved shall be referred to arbitration In London.

Unless the parties agree upon a sale arbitrator, one arbitrator shall be appointed by each party. In the case of an arbitrator on documents if the two arbitrators so appointed are in agreement their decision shall be final. In all other cases the arbitrators so appointed shall appoint a third arbitrator and the reference shall be to the three-man tribunal thus constituted.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

If either of the appointed arbitrators refuses to act or is incapable of acting, the party who appointed him shall appoint a new arbitrator in his place.

If one party fails to appoint an arbitrator, whether original y or by way of substitution for two weeks after the other party, having appointed h s arbitrator, has (by telex, fax), called upon the defaulting party to make the appointment, the President for the time being of the London Maritime Arbitrators Association shall, upon application of the other party, appoint an arbitrator on behalf of the defaulting party and that arbitrator shall have the like powers to act in the reference and make an award (and, if the case so requires, the like duty in relation to tile appointment of a third arbitrator) as if he had been appointed in accordance with the terms of the agreement.

This Contract is governed by English Law and there shall apply to all proceedings under this clause the terms of the London Maritime Arbitrators Association current at the time when the arbitration proceedings were commenced. All appointees shall be members of the Association.

Provided that where the amount in dispute does not exceed the sum of US$ 50,000 any dispute shall be resolved in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

Bimco standard law and arbitration clause 1998 English law London arbitration to apply. General average shall be adjusted, stated and settled according to year 1994 or any subsequent modification thereof, in London.

### Clause 73 - Claims
All claims of whatsoever nature (excluding cargo claims) to be deemed to be waived and barred unless arbitration in accordance with Clause 72 is commenced within twelve months of vessel's redelivery.

Any cargo claim to be settled in accordance with the Inter club N.Y.P.E. Agreement 1996 but subject to notification of claims within fifteen months of cargo discharge instead of the two years provided by the Interclub Agreement shippers' / receivers risk responsibility and expense and without liability on the part of the vessel or her Owner for any loss or damage's expense or delay whatsoever and however caused.

### Clause 74 - General Average
Hire not to contribute to General Average.

### Clause 75 - Shipyard non-delivery clause:
Deleted

### Clause 76 - Plans

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

Immediately upon vessel being fully fixed, Owners to courier to Charterers a good and readable copy of each of vessel's Capacity Plan and General Arrangement Plan and Midship Section Plan, this to include dead-weight scale.

**Clause 77 - Purchase option**
Owners have the right to sell the vessel during the currency of the charter Party provided the Charterers prior approval has been obtained which however not to be unreasonably withheld.

**Clause 78 - Dry-docking**
No dry docking during the currency of this charter party only in case of emergency.

**Clause 79 – Owners' Guarantee**
Owners guarantee:

a. Vessel is geared stsdbc n eng/bri aft

b. All hatches are centrally located in holds and deck are clear of any fitting/ superstructure/ obstacles/ pillars /container shoes. Container fittings are flush with tank top/deck/hatch covers

c. Delete

d. Vessel is equipped with Austualia hold ladders and meets Australian standard/regulations

e. Vessel is fitted for heavy cargo loading and/or alternative hold loading is allowed if required by Charterers

f. Vessel is fully ITF fitted

g. Vessel is fully H+M n P&I covered (including coverage for dmg/loss) and her P&I club is a member of the int'l group of P&I clubs and Owners guarantee vessel's class is a member of IACS and will remain so throughout the currency of this c/p.

h. Vessel holds valid cert of financial responsibility (water pollution) during the entire c/p period.

i. Vessel is in all respect eligible for trading to the ports, places and countries specified in c/p and that at all necessary times. The vessel a/o Owners shall have and keep on board valid certificates, records or other docs required for such trade.

j. Vessel shall be capable of maintaining and shall maintain on good weather days on each leg of all sea passages the average speed for being loaded or in ballast and the average bunker consumptions as stated throughout the currency of this c/p.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

k. Vessel is not blacklisted by any Arab league countries and US/Canadian longshoreman union.

l. Vessel is free fm Asian gypsy moth and has not traded Asian gypsy moth affected area/CIS pacific ports in last 2 years.

m. Vessel is free fm any/all encumbrances incurred by any ga/cgo dmg/ repairs/arrest etc in the last 2 years.

## BIMCO Stowaway Clause

(a)(i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the vessel by means of secreting away in the goods and/or containers shipped by the Charterers.

(ii)    If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them.

Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterer's account and the vessel shall remain on hire.

(iii)   Should the vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a) (ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time the vessel is released and at their expense put up bail to secure release of the vessel.

(b)(i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the vessel shall be off hire.

(ii)   Should the vessel be arrested as a result of stowaways having gained access to the vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners, shall take all reasonable steps to secure that, within a reasonable time, the vessel is released and at their expense put up bail to secure release of the vessel.

## Security Clause

Notwithstanding anything else contained in this charter party all costs or expenses arising out of or related to security regulations or measures required by any country to which the vessel is ordered to sail and/or by the vessel's flag state and/or international

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

organisations including, but not limited to, additional equipment and personnel on board
(such as security officer), security guards, launch services, tug escorts, port security fees
or taxes and inspections, shall be for the Charterers' account, unless such costs or
expenses result solely from the Owners' negligence or result from nationality of officers -
crew or vessel's ownership.

## NAABSA Clause

Charterers have the option to trade vessel in South America, where vessels of similar
size customarily lie safe aground. Owners have the option to arrange inspection of
vessel's bottom and underwater parts by diver and/or class surveyor at a convenient
port if vessel has touched bottom at the NAABSA port. Irrespective of whether any
damages are found in the course of the inspection all costs spent therefore to be for
Charterers' account and the vessel to remain on-hire for the time of such Inspection.
Charterers to remain responsible for loss of time and also the damage to vessel arising
from calling NAABSA ports. Charterers to inform Owners about the intended date of call
of the respective ports / places stating the actual tidal range during that period and also
stating the cargo quantity already on board, the quantity to be loaded/discharged and
the expected time used, for owners approval. Such approval not unreasonably withheld.
Charterers to furnish a valid declaration from the Port Authority of the respective port(s)
that the intended berth is a recognised naabsa-place where vessels of the size and
dimensions as employed under this charter party and with respective cargo on board can
lie safely aground.

## IWL Clause

In the event that the Vessel sustains damage caused by the dangers inherent with
breaching IWL and such damage could not reasonably t lave been avoided by the
Vessel's Master or crew, Charterers shall, without prejudice to the other terms and
conditions of this charter party, reimburse the Owners for the cost of repairing such
damage, but limited to the deductible under Owners' insurance and excluding normal
wear and tear form operations when breaching IWL.

## AGM Clause

Vessel not to call during the currency of the Charter at CIS Pacific Ports at high risk
season. Should the vessel be ordered to call this area during any other period the
Charterers to obtain a Phytosanitary Certificate from the Russian Plant Quarantine. In
any event if the ship is not to be found free of Asian Gipsy Moths (AGMs) during
inspections conducted by the respective authorities in Australia and/or United States
and/or Canada and/or New Zealand, all consequences thereof to be for Charterers'
account who are also to indemnify the Owners and hold them harmless against any loss,
damage or expense including penalties they might suffer as a result of AGMs discovered
during inspections.

## CONWARTIME 2004

(i)   "Owners" shall include the shipowners, bareboat charterers, disponent owners,

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii) "War Risks" shall include any actual, threatened or reported:

war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades
(whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or
any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

(d) (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account.

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass
through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the
Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

manner defined by the said terms, then the actual bonus or additional wages paid shall
be reimbursed to the Owners by the Charterers at the same time as the next payment of
hire is due, or upon redelivery, whichever occurs first.

(f)  The Vessel shall have liberty:-

(i)  To comply with all orders, directions, recommendations or advice as to departure,
arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of
cargo, delivery, or in any other way whatsoever, which are given by the Government of
the Nation under whose flag the Vessel sails, or other Government to whose laws the
Owners are subject, or any other Government, body or group whatsoever acting with the
power to compel compliance with their orders or directions;

(ii)  To comply with the order, directions or recommendations of any war   risks
underwriters who have the authority to give the same under the  terms of the war risks
insurance;

(iii) To comply with the terms of any resolution of the Security Council of the United
Nations, the effective orders of any other Supranational body which has the right to issue
and give the same, and with national laws aimed at enforcing the same to which the
Owners are subject, and to obey the orders and directions of those who are charged with
their enforcement;
(iv)  To discharge at any other port any cargo or part thereof which may render the
Vessel liable to confiscation as a contraband carrier;

(v)  To call at any other port to change the crew or any part thereof or other persons on
board the Vessel when there is reason to believe that they may be subject to internment,
imprisonment or other sanctions.

(g)  If in accordance with their rights under the foregoing provisions of this Clause, the
Owners shall refuse to proceed to the loading or discharging ports, or any one or more of
them, they shall immediately inform the Charterers. No cargo shall be discharged at any
alternative port without first giving the Charterers notice of the Owners' intention to do
so and requesting them to nominate a safe port for such discharge. Failing such
nomination by the Charterers within 48 hours of the receipt of such notice and request,
the Owners say discharge the cargo at any safe port of their own choice.

(h)  If in compliance with any of the provisions of sub-clauses (b) to

(g) Of this Clause anything is done or not done, such shall not be deemed a deviation,
but shall be considered as due fulfillment of this Charter Party.

## GENERAL AVERAGE AND THE NEW JASON CLAUSE
General Average shall be payable according to the York/Antwerp Rules, 1974 as
amended 1990, but where the adjustment is made in accordance with the law and
practice of the United States of America, the following clause shall apply:-

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any clause whatsoever, whether due to negligence or not for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges there shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery.

And Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

## U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. The provisions stated in said Act shall (except as may be otherwise specifically provided herein) govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in custody of the Carrier.
The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery or mis-delivery, or loss of or damage to the goods occurring while the goods are not in the actual custody of the Carrier.

## Canadian Clause Paramount

All the terms and conditions of the Canadian Water Carriage of Goods Act, 1936, and of the Rules comprising the schedule thereto are, so far as applicable, to govern the contract contained in this Bill of Lading and the Shipowners are to be entitled to be benefit of all privileges, rights and immunities contained in such Act and in the schedule thereto as if the same were herein specifically set out. If anything herein contained to be inconsistency and no further be null and void.
The Carrier shall be under no responsible whatsoever for loss of or damage to goods howsoever and wheresoever occurring when such loss or damage arises prior to the loading on and/or subsequent to the discharge from the Carrier's ship.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

## NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this
Charter Party fails to be determined in accordance with the Laws of the United States of
America, the following clause shall apply:

"If the ship comes into collision with another ship as a result of the negligence of the
other ship and any act, neglect or default of the Master, mariner, pilot or the servants of
the carrier in the navigation or in the management of the ship, the Owners of the goods
carried hereunder will indemnify the carrier against all loss or liability to the other or
non-carrying ship or her Owner in so far as such loss or liability represents loss of or
damage to or any claim whatsoever of the Owners of the said goods, paid or payable by
the other or non-carrying ship or her Owner to the Owners of the said goods and set off,
recouped or recovered by the other or non-carrying ship or her Owners as part of their
claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, operators or those in charge
of any ship or ships or objects other than, or in addition to, the colliding ships or objects
are at fault in respect to a collision or contact.

The foregoing provisions shall apply where the Owners, Operators or those in charge of
any ships or objects other than, or in addition to, the colliding ships or objects are at
fault in respect to a collisions or contact."

## BIMCO ISPS Clause for Time Charter Parties

### (a)

**(i)** From the date of coming into force of the International Code for the Security of
Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS
(ISPS Code) in relation to the Vessel and thereafter during the currency of this
Charter Party, the Owners shall procure that both the Vessel and the "the
Company" (as defined by the ISPS Code) shall comply with the requirements of
the ISPS Code relating to the Vessel and "the Company". Upon request the Owners
shall provide a copy of the relevant International Ship Security Certificate (or the
Interim International Ship Security Certificate) to the Charterers.  The Owners
shall provide the Charterers with the full style contact details of the Company
Security Officer (CSO).

**(ii)**     Except as otherwise provided in this Charter Party, loss, damage, expense
or delay, excluding consequential loss, caused by failure on the part of the Owners
or "the Company" to comply with the requirements of the ISPS Code or this Clause
shall be for the Owners' account.

### (b)

**(i)** The Charterers shall provide the CSO and the Ship Security Officer
(SSO)/Master with their full style contact details and, where sub-letting is

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

**(ii)**    Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

**(c)** Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

**(d)** If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## War Cancellation Clause 2004

Either party may cancel this Charter Party on the outbreak of war (whether there be a declaration of war or not)

(a)    between any two or more of the following countries: the United States of America; Russia; the United Kingdom; France; and the People's Republic of China, or,

(b)  between..................................................................................................

## Weather Routeing Clause for Time Charter Parties

(a) The Vessel shall, unless otherwise instructed by the Charterers, proceed by the customary route, but the Master may deviate from the route if he has reasonable grounds to believe that such a route will compromise the safe navigation of the Vessel.

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

(b) In the event the Charterers supply the Master with weather routeing information, although not obliged to follow such routeing information, the Master shall comply with the reporting procedure of that service.

## Bunker Fuel Sulphur Content Clause for Time Charter Parties 2005

(a) Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this Sub-clause (a).

(b) Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with Sub-clause (a), the Owners warrant that:

(i) the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and
(ii) the Vessel shall be able to consume fuels of the required sulphur content when ordered by the Charterers to trade within any such zone.
Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.
(c) For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

## Non-Payment of Hire Clause for Time Charter Parties

Atlantic Shipbrokers, London

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

(a)  If the hire is not received by the Owners by midnight on the due date, the Owners may immediately following such non-payment suspend the performance of any or all of their obligations under this Charter Party (and, if they so suspend, inform the Charterers accordingly) until such time as the payment due is received by the Owners. Throughout any period of suspended performance under this Clause, the Vessel is to be and shall remain on hire. The Owners' right to suspend performance under this Clause shall be without prejudice to any other rights they may have under this Charter Party.

(b)  The Owners shall notify the Charterers in writing within 24 running hours that the payment is overdue and must be received within 72 running hours from the time hire was due. If the payment is not received by the Owners within the number of running hours stated, the Owners may by giving written notice within 12 running hours withdraw the Vessel.  The right to withdraw the Vessel shall not be dependent upon the Owners first exercising the right to suspend performance of their obligations under this Charter Party pursuant to sub-clause (a). Further, such right of withdrawal shall be without prejudice to any other rights that the Owners may have under this Charter Party.

(c)  The Charterers shall indemnify the Owners in respect of any liabilities incurred by the Owners under the Bill of Lading or any other contract of carriage as a consequence of the Owners' suspension of and/or withdrawal from any or all of their obligations under this Charter party.

(d)  If, notwithstanding anything to the contrary in this Clause, the Owners choose not to exercise any of the rights afforded to them by this Clause in respect of any particular late payment of hire or a series of late payments of hire, this shall not be construed as a waiver of their right either to suspend performance under sub-clause (a) or to withdraw the Vessel under sub-clause (b) in respect of any subsequent late payment under this Charter Party.

## U.S. Customs Advance Notification/AMS Clause for Time Charter Parties

(A) If the vessel loads or carriers cargo destined for the U.S. or passing through U.S. ports in transit, the Charterers shall comply with the current U.S. customs Regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

i)      Have in place a SCAC (Standard Carrier Alpha code);
ii)     Have in place a ICB (International Carrier Bond);
iii)    Provide the Owners with a timely confirmation of i) and ii) above; and

RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD
CHARTER PARTY DATED 20TH SEPTEMBER 2008

iv)    Submit a cargo declaration by AMS (Automated Manifest System) to the
U.S. Customs and provide the Owners at the same time with a copy thereof.

(B)The Charterers assume liability for and shall indemnify, defend and hold
harmless the Owners against any loss and/or damage whatsoever (including
consequential loss and/or damage) and/or any expenses, fines, penalties and all
other claims of whatsoever nature, including but not limited to legal costs, arising
from the Charterers' failure to comply with any of the provisions of sub-clause (A).
Should such failure result in any delay then, notwithstanding any provision in this
Charter Party to the contrary, the vessel shall remain on hire.

(C)If the Charterers' ICB is used to meet any penalties, duties, taxes or other
charges which are solely the responsibility of the Owners, the Owners shall
promptly reimburse the Charterers for those amounts.

(D)    The assumption of the role as carrier by the Charterers pursuant to this
Clause and for the purpose of the U.S. Customs Regulations (19 CFR 4.7) shall be
without prejudice to the identity of carrier under any Bill of Lading, other contract,
law or regulation.

## BIMCO Standard Year 2000 Clause

Should mean that neither performance nor functionality of computers systems, electronic
and electromechanical or similar equipment will be affected by dates prior to or during
the year 2000.
Without prejudice to their other rights, obligations and defenses under this Charter Party,
including, where applicable, those of Hague-Visibly rules, the Owners warrant that they
will ensure Year 2000 conformity in so far as this has a bearing on the performance of
the Charter Party.

## BIMCO Standard Law & Arbitration Clause 1998 – English Law, London Arbitration

This contract shall be governed by and construed in accordance with English Law and any
dispute arising out of or in connection with this contract shall be referred to arbitration in
London in accordance with the Arbitration Act 1996 or any statutory modification or re-
enactment thereof save to the extent necessary to give effect to the provisions of this
Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators
Association (LMAA) Terms current at the time when the arbitration proceedings are
commenced.

The reference shall be to three arbitrators. A Party wishing to refer a dispute to
arbitration shall appoint its arbitrator and send notice of such appointment in writing to

### RIDER CLAUSES TO MV TOLMI / MCTAGGART SHIPPING AND MANAGEMENT CO. LTD CHARTER PARTY DATED 20TH SEPTEMBER 2008

the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified. The party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitration shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor counterclaim exceeds the sum of USD50,000 (or such other sum as the parties may agreed). The arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

RIDER CLAUSES TO MV TOLMI / NOBEL BULK CARRIERS LTD
CHARTER PARTY DATED 25TH MAY 2007

**Additional Clauses**

**Clause 80**
Vessels crew to open/close hatch covers, lashing will be done by shore labours at loading port but unlashing shall be done by crew prior arrival of discharge port(s). All lashing to be carefully examined and tightened at the beginning of voyage and further examined at regular intervals during the voyage and tightened as necessary by crew. However Charterers are free to use all materials of lashing/securing/ dunnage/ catwalk/ lifeline including wire rope as on board. Charterers to pay bonus Usd 2,000 lumpsum to crew directly for all above extra works. Crew will only unlash cargo prior arrival if weather permitting.

**Clause 81**
Charterers are entitled to deduct from hire payment Owners' expenses Usd 1,000 per port without Owners' authority, however, Owners' expenses are in excess of Usd 1,000 Owners to appoint their own agent at relevant port.

**Clause 82**
If cargo is loaded at a safe anchorage of Mayumba, about 30 stevedores who will  load cargo at Mayumba are permitted at Charterers responsibility and expenses to embark on board at Owendo or port Gentil from shore or launch, sleep on deck/sheltered area designed by master, and disembark at Owendo or port Gentil. Any provision of fresh water or food spent by these stevedores on board to be for Charterers account.

Should Charterers' Stevedores/Representatives travel on board the vessel, number not to exceed what is allowed by safety equipment. Also, food and water to be provided by Charterers and to be for Charterers' account.

**Clause 83**
Double banking operations including loading/discharge/bunkering is allowed.

As per Bimco Double Banking Clause.

☑001

PLS FIND ATTACHED ADDITIONAL CLAUSES TO FORM PART OF C/P.
ALSO, FIND A GUIDELINE FOR WOOD PACKAGING MATERIAL
WHICH CHARTERERS MUST COMPLY WITH SHOULD THEY CHOOSE
TO TRADE U.S. PORTS.
ALSO, FOLLOWING EXTRA WAR RISK INSURANCE CL TO FORM PART
OF C/P PLS:
ANY EXTRA AND / OR ADDITIONAL WAR RISK INSURANCE
PREMIUM CHARGED BY OWNERS' INSURANCE BROKER BY REASON
OF VESEL'S TRADING UNDER THIS C/P TO BE FOR CHARTERERS
ACCOUNT AND TO BE REFUNDED TO OWNERS BY CHARTERERS
UPON RECEIPT OF COPIES OF OWNERS INSURANCE BROKERS NET
INVOICES. ANY CREW WAR BONUSES APPLICABLE BY REASON OF
VESSEL TRADING UNDER THIS C/P TO BE REFUNDED TO OWNERS
BY CHARTS AGAINST DOCUMENTATION.
BREGDS

002

# Southern Currents



## Notice to the Area Port of New Orleans Trade Community

No.: 05-053

Date    June 23, 2005

**SUBJECT:    New USDA Wood Packaging Material Regulations – Effective September 16, 2005**

USDA has revised its import regulation for wood packaging material (WPM). The revised WPM regulation is effective as of September 16, 2005. The regulation requires WPM coming into the U.S. to be treated and marked. The approved treatments are either heat treatment to a minimum wood core temperature of 56°C for a minimum of 30 minutes or fumigation with methyl bromide (MB). An acceptable mark is:



XX represents the ISO country code.
000 represents the unique number assigned by the national plant protection organization.
YY represents either HT for heat treatment or MB for methyl bromide fumigation.

In cases of noncompliance, an examining officer at the port of first arrival may order the immediate re-export of regulated wood packaging material along with the accompanying cargo. In other words, if your WPM is not treated and marked, your cargo may also be subject to immediate export. Please ensure your company's compliance.

**Effective September 16, 2005, paper certificates of treatment will no longer be required or acceptable.**

There are certain exemptions from the new requirements. More information is available from USDA or at http://www.aphis.usda.gov/ppq/swp/import.html

Merlin A. Hymel, Jr.
Port Director, Trade

☑ 003

Copyright BIMCO

# U.S. Trade - Unique Bill Of Lading Identifier Clause

The Charterers warrant that each transport document accompanying a shipment of cargo destined to a port or place in the United States of America shall have been endorsed with a Unique Bill of Lading Identifier as required by the U.S. Customs Regulations (19 CFR Part 4 Section 4.7.a) including subsequent changes, amendments or modifications thereto, not later than the first port of call.

Non-compliance with the provisions of this Clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them.

Furthermore, all time lost and all expenses incurred including fines as a result of the Charterers' breach of the provisions of this Clause shall be for the Charterers' account.

Copyright BIMCO

Home>Documents>BIMCO clauses>U.S. Tax Reform 1986 Clause

# U.S. Tax Reform 1986 Clause

Any U.S. Gross Transportation Tax as enacted by the United States Public Law 99-514, (also referred to as The U.S. Tax Reform Act of 1986), including later changes or amendments, levied on income attributable to transportation under this charter party which begins or ends in the United States, and which income under the laws of the United States is treated as U.S. source transportation gross income, shall be reimbursed by the Charterers.

⚅005

Copyright BIMCO

## U.S. Customs 24 Hours Rule for Time Charter Parties

(a) If loading cargo destined for the U.S. or passing through U.S. ports in transit, the Charterers shall:

(i) Provide all necessary information, upon request by the Owners, to the Owners and/or their agents to enable them to submit a timely and accurate cargo declaration directly to the U.S. Customs; or

(ii) If permitted by U.S. Customs Regulations (19 CFR 4.7) or any subsequent amendments thereto, submit a cargo declaration directly to the U.S. Customs and provide the Owners with a copy thereof.

In all circumstances, the cargo declaration must be submitted to the U.S. Customs latest 24 hours in advance of loading.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with the provisions of sub-clause (a).

(c) If the Vessel is detained, attached, seized or arrested as a result of the Charterers' failure to comply with the provisions of sub-clause (a), the Charterers shall provide a bond or other security to ensure the prompt release of the Vessel. Notwithstanding any other provision in this Charter Party to the contrary, the Vessel shall remain on hire.

☑ 006

Page 1 of 1

Copyright BIMCO

Home.\.Documents\..\BIMCO clauses.\..U.S. Customs-Trade Partnership Against Terrorism (C-TPAT) Clause

## U.S. Customs-Trade Partnership Against Terrorism (C-TPAT) Clause

The Charterers have voluntarily signed the C-TPAT Agreement with the U.S. Customs Service. The Owners, Master and Crew will use reasonable efforts to assist the Charterers to comply with their obligations under the C-TPAT Agreement. However, under no circumstances shall the Owners, Master and Crew be liable for any delays, losses or damages howsoever arising out of any failure to meet the requirements of the C-TPAT Agreement signed by the Charterers.

The Charterers agree to indemnify and hold the Owners, Master and Crew harmless for any claims made against the Owners, Master and Crew or for any delays, losses, damages, expenses or penalties suffered by the Owners arising out of the C-TPAT Agreement signed by the Charterers.